FOX WEST COAST THEATRES COR-
PORATION, Twentieth Century-Fox
Film Corporation and Loew's, Incorpo-
rated, Appellants,

v.

PARADISE THEATRE BUILDING COR-
PORATION, Appellee.

PARADISE THEATRE BUILDING COR-
PORATION, Appellant,

v.

FOX WEST COAST THEATRES COR-
PORATION, Twentieth Century-Fox
Film Corporation and Loew's, Incorpo-
rated, Appellees.

No. 15424.

United States Court of Appeals
Ninth Circuit.

Sept. 10, 1958.

O'Melveny & Myers, Homer I. Mitchell, William B. Carman, Philip F. Westbrook, Jr., Newlin, Tackabury & Johnston, Frank R. Johnston, David H. Massey, Los Angeles, Cal., for appellant.

Weller & Corinblit, Jack Corinblit, Los Angeles, Cal., Joseph Alioto, San Francisco, Cal., Elwood S. Kendrick, Los Angeles, Cal., for appellee.

Before POPE, FEE and CHAMBERS, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

After a jury found that certain producer-distributor-exhibitors had conspired together to monopolize and unreasonably restrain interstate commerce in the licensing of motion pictures to a theatre for exhibition in a specific area on a seven-day run during a limited period and assessed damages therefor, the verdict and judgment are assailed by the producers on the ground that there was no substantial evidence to support liability or the award of damages. The producers also question certain instructions given by the trial court to the jury.

Paradise Theatre Building Corporation, hereinafter referred to as "Paradise," brought action against Fox West Coast Theatres Corporation, Twentieth Century-Fox Film Corporation and Loew's, Incorporated, all of which are appellants, and also against Paramount, Warner's and Universal, against none of which the jury returned a verdict. The complaint was based upon an alleged conspiracy resulting in the uniform refusal of all defendants to license motion pictures to Paradise on Los Angeles first run. The conspiracy among all defendants was alleged to have resulted also in a coordinated refusal to license a seven-day run in Inglewood and Westchester, and that Paradise was injured thereby. A trial was held where there was a voluminous record. The jury found, in response to a special interrogatory, that there was no conspiracy on the part of any of defendants as to Los Angeles first run. This phase of the case is not here for review. In answer to another special interrogatory, the jury found a conspiracy on the part of Fox West Coast Theatres Corporation, Twentieth Century-Fox Film Corporation and Loew's, Incorporated, as to the licensing of the seven-day runs. By implication, no conspiracy was found on the part of Paramount, Warner's or Universal. A judgment was returned in favor of the last named defendants. The jury returned a verdict against defendants Fox West Coast Theatres Corporation, Twentieth Century-Fox Film Corporation and Loew's, Incorporated, in the sum of $20,000.00. This appeal is from a final judgment against defendants last named for the treble damages in the amount of $60,000.00 and $10,000.00, attorney fees, and $1,657.69 costs.

The Paradise Theatre constructed by appellee was located in the Westchester district. The Loyola Theatre, of Fox, was located less than a half mile away. Loyola exhibited Fox pictures on the Los Angeles first run day and date with Grauman's Chinese, in Hollywood, Los Angeles, in the downtown area, and Wilshire and Uptown theatres, in the Wilshire district, all of which were Fox theatres. Before Paradise and La Tijera, a theatre which was also located in the Westchester district of Los

Angeles, were built, Loew's did not license a seven-day run to any theatre in the City of Los Angeles except in the faraway sections of San Pedro and Wilmington. Its practice was to offer a twenty-one-day run in the urban area. In Inglewood, a section merging into Westwood, it licensed a single seven-day run. After La Tijera and Paradise were built, Loew's offered Paradise a twenty-one-day run without bidding. All defendants uniformly refused to license motion pictures to Paradise Los Angeles first run. Paradise demanded the right to license a nonexclusive seven-day run without bidding against other theatres in the general area. All defendants refused this demand.

Before 1949, there were four motion picture theatres in Inglewood and Westchester, including the Loyola. Within twenty months, there were constructed six additional theatres, including Paradise and La Tijera and the Fox in downtown Inglewood.

■ The jury found a conspiracy between Fox West Coast, Twentieth Century-Fox and Loew's to refuse to Paradise a right to license a nonexclusive seven-day run without competitive bidding between September 18, 1950, and September 17, 1951. The first question is whether there was substantial evidence to sustain the verdict on this point.

Admittedly, there was parallel action by all these parties in the refusal. There was likewise evidence that in 1944 or 1945 the Fox interests had indicated an intention to prevent the construction of any outside theatre in Westchester. In 1946, Fox West Coast constructed the Loyola Theatre. The custom of exhibiting motion pictures simultaneously in various groups of theatres is well established. The licensing of motion pictures on successive runs is also well established in practice and recognized by law. The Los Angeles first run launches a picture. The seven-day run is the next important step. Generally this licensing is confined to communities outside the downtown Los Angeles area. Much later there occurs the more general exhibition of a picture on twenty-one-day and later runs.

Each distributor determines in what areas it will license a given run of its pictures and the number of pictures it will license in a given area.

The distributor is also able to select a theatre in an area in which to exhibit its pictures on a seven-day run to the exclusion of any other. Another practice of the distributor is to use competitive bidding to rent pictures desired by competing exhibitors for the same day and date showing. Loew's used this method of determining which theatre in Inglewood or Westchester would be licensed the seven-day run on each picture. Paradise bid on a few pictures and only obtained one seven-day run of Loew's pictures by this method. Fox obtained several of Loew's pictures by the bidding method. It was not shown that in the bidding Fox was accorded any special privileges by Loew's.

There was evidence that, before Paradise opened, there had been an agreement by certain distributors, including Fox, to divide up the pictures in this area and not to bid for Loew's product in the Academy, Fifth Avenue or Fox Theatres in Inglewood. This arrangement ceased before Paradise opened. However, there was some evidence from which it might have been concluded by the jury that certain exhibitors, including Fox, had agreed not to bid against each other in certain areas which may have included the one in dispute.

■ Appellants contend that the divergent reason for the conduct of Fox and Loew's in licensing their seven-day runs shows conclusively that there was no conscious parallelism of action. But it was possible for the jury to conclude from the evidence that the simultaneous refusal of Fox and Loew's amounted to the forbidden parallelism worked out by different methods. Even parallelism does not raise the inference of conspiracy necessarily where the conduct is reasonably responsive to business considerations as to the respective defendants.

Fox had a right to license its pictures on any particular run to its own theatres. Loew's had a perfect right to select a particular theatre for exclusive showing on particular runs or could have required competitive bidding. However, the charge is that these distributors conspired to do these acts and not to interfere with each other to their detriment. As Judge Yankwich said, the question presented is whether "the actions of the defendants * * * exceed the limits of choice of, or preference in, dealing allowed by law to one engaged in a private enterprise for profit." United States v. Twentieth Century-Fox Film Corporation, D.C., 137 F. Supp. 78, 115. But it must be kept in mind that this is a question of fact which the jury has decided against appellants. It makes no difference that the jury found the facts and the intentions of the parties proved a conspiracy here, whereas a trial judge, sitting without a jury, found to the contrary on somewhat similar facts and his findings and judgment were affirmed by this Court. See Fanchon & Marco, Inc. v. Paramount Pictures, Inc., 9 Cir., 215 F.2d 167. There is no power in this Court to reverse a verdict on such grounds. The only problem is whether there was sufficient evidence to submit to the jury. This is a problem of law.

■ There was substantial evidence upon which the jury might have found a conspiracy by Fox West Coast, Loew's and Twentieth Century-Fox. There was evidence from which the jury might have found that Universal, Warner's and Paramount were members of the conspiracy. However, the jury, as fact finders, brought a verdict absolving the three latter of complicity in the unlawful agreement. However, this as to each of these three defendants does not absolve Fox West Coast, Loew's and Twentieth Century-Fox even if the verdicts were inconsistent. Once it is found that there was substantial evidence that these three organizations combined unlawfully to discriminate against Paradise, then evidence of action by others tending to produce the unlawful result may be corroborative of the charge, even though these others may not be found eventually to have been conspirators. The jury may clear some participants in parallel action for lack of knowledge of the scheme or unlawful design or because they were coerced. Thus, although each may have been a participant in acts which tended to effectuate the result complained of, the jury may have found them innocent tools of the conspirators whom the jury found unlawfully formulated, carried on and did overt acts charged to bring about the isolation of Paradise. The jury had a right and the duty to consider the record as a whole and determine who, if any, were participants in an unlawful combination.

If one thing is more certain than any other in this field, it is that Paradise had no right as such to demand licensing on a seven-day basis. It may well be, according to the evidence, that, if Paradise were licensed on such a basis by Loew's, a number of theatres in various areas in the general vicinity would demand of Loew's a seven-day run, and it probably would have been difficult to find reason or excuse for denying some of these demands. If all were granted, it is probable Loew's would have lost a great deal of revenue in the metropolitan area and in nearby localities. It seems reasonable to believe a faster play-off of pictures and an increase in multiple showings, which is recognized as a detriment to the industry, would result On such a basis, Loew's, if acting independently, had a right to refuse the request of Paradise.

But this is begging the question. Was Loew's acting independently? The jury found not. The verdict found that Fox West Coast had walled off the area where Paradise was erected and claimed dominion. Fox West Coast insisted on a clearance over Paradise, and Loew's acceded, at least the jury so found.

There are a number of collateral facts to which the same answer may be made. Loew's had an unqualified right to offer

its pictures for bidding and to choose the theatres which might bid. But it could not do so to serve the interests of Fox West Coast. And it could not rig the bidding at the direction of Fox West Coast.

There are more collateral issues. An issue was tried as to which of any theatres were in substantial competition with Paradise. Any distributor could define the competitive area and the theatres to be included to satisfy the demands of his business, if he acted independently. No two could combine so as to define the area or to include certain theatres therein with the plan of discriminating against an independent entitled to be included. It may well be true, and there is some evidence to support the proposition, that Loew's made more money by following the system of bidding in the area. It may be that very factor was the motive which impelled Loew's to join the conspiracy. Such a factor of economic advantage to a conspirator is one reason Congress declared such combinations unlawful.

■ Defendants object to the fact that the trial court instructed the jury, in form requested by defendants, that certain acts by any of the parties before the court were lawful, but added to each instruction the words "in the absence of conspiracy." The acts detailed in the instructions were lawful only if these were done neither in furtherance of the objects nor to bring about the consummation of an illegal design charged. The complaint alleges here the doing of acts perfectly lawful in themselves, pursuant to an unlawful design to discriminate against Paradise improperly and to the damage of the latter. The requested instructions could have been refused because the contingency that these might have been done as a result of and pursuant to a conspiracy was not therein embodied. If given without qualification, there would have been reversible error. There is nothing to the proposition that "conspiracy" had not been defined or that the qualification gave undue prominence to a conspiracy. The whole

case was about a conspiracy. The jury was not misled, since it was found that certain of the alleged participants were not parties to the conspiracy. The jury also found no conspiracy as to licensing practices regarding Los Angeles first run. The charge as a whole sufficiently defined the issues. We do not believe the remarks of the court in The Flinkote Company v. Lysfjord, 9 Cir., 246 F.2d 368, are applicable to this situation or to the instructions as a whole. The whole defense in this case is predicated upon the theory that defendants had a right to do the acts enumerated in the instruction, if impelled by business considerations affecting the particular distributors.

The thesis of the briefs of appellants is that this right was absolute, and therefore they could agree to do these acts to the detriment of Paradise with legal impunity. This is not the law. The trial court told the jury that no inference of conspiracy was to be drawn from the doing of these acts. But, if a conspiracy were found, such acts were no longer lawful if done in pursuance of the objectives for bringing about the consummation of the unlawful design which the jury found. Appellants present an elaborate argument on the evidence to show that the patronage of the theatre which won the bid for the seven-day run in Inglewood and Westchester would have been decreased by the licensing of an additional seven-day run to Paradise. At best, this argument was one which might have been addressed to a jury. Appellants presented evidence of a survey which purported to show that Academy drew a substantial part of its patronage from the area from which Paradise drew its patronage. Reliance is placed upon a poll conducted by Paradise, which showed that 84% of Westchester residents questioned went to theatres in automobiles and 44% stated that they attended motion picture theatres outside of Westchester. A comparison of the performance of Paradise with that of Academy and Southside theatres upon pictures which the national rentals might show were comparable indicated

that its patronage was considerably less percentagewise when it played day and date with Academy (4.5 miles distant) than when it played under similar conditions with Southside (6.9 miles distant). Comparison of other theatres in the area might show by inference that theatres as far removed as six miles from Paradise would draw a substantial amount of their patronage from the same area as Paradise. Other evidence as to performance on certain pictures tends to substantiate the claim that additional seven-day runs in the area materially reduced its patronage. In several instances, those connected with Paradise made claims or admissions that Paradise was in substantial competition with theatres in the area, notably Academy, Fox and La Tijera.

There was evidence that an exclusive seven-day run followed by later successive runs produced more revenue for Loew's than it would have received if it had established additional seven-day runs. Furthermore, there was evidence that an additional seven-day run to Paradise would have constituted a precedent for distribution methods which might have resulted in a fast instead of a slow play-off of pictures in the whole Los Angeles area as well as in Inglewood and Westchester.

Of course, this was all proper evidence to be submitted to the jury upon the claim of appellants that the refusal of Loew's to establish an additional seven-day run for Paradise without bidding was based upon reasonable business considerations. But the question whether Loew's acted because of such considerations or, on the other hand, had entered into a conspiracy to refuse with others was still for the jury, since there was substantial evidence to support the latter contention.

There was evidence that Fox West Coast insisted upon a clearance over Paradise because it insisted that the latter was in substantial competition. There was testimony that the distributors, including appellants Loew's and Twentieth Century-Fox, gave this as a reason why they would not permit Para-

dise to exhibit on a seven-day availability during the early period of the operation of the latter, and that, as a result, it was treated differently than Southside. There was testimony that one of the executives of Fox West Coast took steps to monopolize the Westchester territory and, specifically, that one competitor was kept out of the area by that chain. When Paradise was under construction, it is testified that the same executive remonstrated to the President of Paradise that the latter should not go into territory which Fox West Coast had preempted for itself. There are numerous other portions of the evidence which were available for consideration of the jury. One witness testified that, whether Academy or Fox West Coast purchased a picture, the latter finally determined whether a theatre would play day and date with Academy or whether it would not. Another witness testified that, in one instance where a picture purchased from Columbia opened at the Fifth Avenue, a Fox West Coast theatre, the latter removed the picture from the Fifth Avenue program when it was found that Columbia had permitted the picture to be run day and date by Paradise.

There was also evidence from which it might be inferred that there was a comprehensive scheme of allocation of pictures dictated by Fox West Coast and that this plan included a sham bidding arrangement whereby the distributors sent out letters for bids with the knowledge that, whatever the bids, the product in question of a distributor would be licensed to an exhibitor who was predetermined.

There is no question that all this evidence did not apply to Loew's and Twentieth Century-Fox, but it did apply generally to the operations of Fox West Coast. The mere fact that certain of these operations of Fox West Coast were in conjunction with other defendants whom the jury exonerated or excused is not significant. The evidence was sufficient for the jury to find Fox West Coast was engaged in practices which established its motivation and which might

be lawful if Loew's and Twentieth Century-Fox had not combined with it in bringing these policies to fruition.

It must be concluded therefore that the jury had ample grounds for the finding that there was an unlawful conspiracy between the three appellants. Whether this Court would have found such a conspiracy or whether the trial judge would have found a conspiracy is beside the point. If the jury had not found that Loew's was a member of this conspiracy, it may well be that the charge might not have been sustained since Fox West Coast and Twentieth Century-Fox were treated by the lower court as an entity. Appellants, in the briefs and arguments, treat these corporations as an entity when it suits their purposes, but, when it does not, inconsistently argue that Fox West Coast did not have knowledge or part in certain actions of Twentieth Century-Fox. But, since Loew's was found, upon evidence which we have held sufficient, to have been a conspirator, this discrepancy is of no moment.

There was substantial evidence of damage. Such damage need not be made patent item by item as on a balance sheet. The mere unlawful combination over a period of time to eliminate competition is proof of damage. The fact that the jury did not bring in a verdict against Paramount, Warner's and Universal does not even suggest that the practice of these defendants were lawful, as appellants argue. Nor does this circumstance suggest that Paradise could have had any of these distributors as a source of supply. The inferences to be drawn from the evidence is that such sources of supply were not available. It is uncontroverted that Paradise, during the period in question, got no pictures on seven-day run from Loew's and Twentieth Century-Fox and only a scattering few from other sources. There is testimony from which it could be concluded that on a consistent seven-day run program increased profits and increased gross receipts would result.

It was also a reasonable inference that Paradise would have obtained a sufficient supply if it had not been for the conspiracy. It appears clear that the $20,000.00, awarded by the jury, represented only nominal damages and that the evidence would have sustained a vastly greater award. This circumstance, however, reflects the impartiality of the jury and the absence of passion or prejudice.

The finding of the jury was proper and supported by the evidence. There was no error in instruction.

Paradise has also cross-appealed the determination by the trial judge of reasonable attorney fees permitted by 15 U.S.C.A. § 15. An examination of the record reveals that the trial judge properly exercised his discretion in determining what in this situation constituted a reasonable fee.

Affirmed.