692 F.2d 1245
 1982-83 Trade Cases 65,017
 D & S REDI-MIX, an Arizona corporation, Plaintiff-Appellee,
v.
SIERRA REDI-MIX AND CONTRACTING COMPANY, an Arizona
corporation and Eddie Cyr, dba Cashway Concrete
and Materials, Defendants-Appellants.
 No. 81-5493.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 8, 1982.
Decided Nov. 2, 1982.
 
 Curtis A. Jennings, Jay M. Mann, Jennings, Kepner & Haug, Phoenix, Ariz., for defendants-appellants.
 S. Leonard Scheff, Erik M. O'Dowd, Tucson, Ariz., for plaintiff-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before WRIGHT, TANG and SCHROEDER, Circuit Judges.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Sierra Redi-Mix and Contracting Co. (Sierra) and Eddie Cyr (Cyr), dba Cashway Concrete and Materials (Cashway), fought D&S Redi-Mix (D&S) for control of the concrete market in Sierra Vista, Arizona. Sierra and Cyr won. We must decide if their tactics violated the federal antitrust laws.
 
 I. Facts
 
 2
 Sierra began making and selling concrete in Sierra Vista in 1956. Until 1969 it was virtually the only concrete company in town. Several smaller operations opened, but each closed within a year.
 
 
 3
 The Sierra Vista concrete market includes four identifiable submarkets. Fort Huachuca, a nearby federal installation, and the Arizona State Highway Department require high quality concrete made to specification. Contractors require union labor if they are themselves unionized, and sometimes require specification concrete. Individuals' home projects rarely require union labor or specification concrete, but need deliveries on evenings and weekends.
 
 
 4
 Before D&S's entry into the market in December 1969, Sierra served all of these customers. D&S competed with Sierra primarily for the nonunion contractors and individuals. D&S had enough equipment to make basic concrete, but little else. It could offer low prices because its overhead was lower, and more flexible hours because its employees were nonunion.
 
 
 5
 D&S initially priced its concrete at $14.50 per yard, and $14.00 for contractors. Sierra's price, when D&S opened, was at least a dollar per yard higher. Soon Sierra dropped its price to $14.00 per yard for preferred customers.
 
 
 6
 In August 1970, Cyr opened Cashway on land he owned, with $5,000 and equipment taken or leased from two of his wholly-owned corporations. Cashway was nonunion and had none of the equipment necessary to make specification concrete. When Cashway opened, its price was $14 per yard, and Sierra's increased to $17.50 per yard.
 
 
 7
 During Cashway's first months, Cyr and Sierra subsidized it heavily. Cyr's other companies that leased Cashway equipment delayed billing Cashway. Materials that Cashway got from Sierra or Cyr's other companies were not paid for currently. Sierra also purchased concrete and materials from Cashway, usually at premium prices.
 
 
 8
 Cashway's prices varied enormously. Generally at $13 to $13.50, on one occasion the price dropped to $12 per yard. Of greater significance were the credit arrangements. Contractors made major purchases, but often could not pay until a project was completed. Because Cyr instructed his other companies, and Sierra agreed, not to press Cashway for payment, it could extend similar favorable credit terms to its customers.
 
 
 9
 By July 1971 D&S began to suffer severe cash flow problems, and failed shortly thereafter.
 
 
 10
 D&S filed suit under sections 1 and 2 of the Sherman Act. 15 U.S.C. Secs. 1, 2 (1976). It alleged that Sierra and Cyr agreed to divide the concrete submarkets between them, Sierra serving union contractors, the Fort, and the State, Cashway serving nonunion contractors and individuals. D&S argued that Sierra and Cyr subsidized the low overhead of Cashway, so that it could undercut D&S and drive it out of business. D&S also filed claims relating to septic tanks, but does not appeal the district court's dismissal of those. The jury awarded D&S $570,000 in damages, and the judgment was remitted to $238,720.80.
 
 
 11
 Sierra and Cyr appeal from the judgment. They apparently concede that D&S introduced sufficient evidence to support the verdict on most of the elements of its sections 1 and 2 claims. They argue that D&S did not prove either that Cashway engaged in predatory pricing or that their conduct proximately caused injury. They also contest the computation of damages, and the remittitur. We find no merit in these arguments, or in the alleged errors on jury instructions and evidentiary matters.
 
 II. Predatory Pricing
 
 12
 Claims under Sections 1 and 2 of the Sherman Act can be based on common facts. Sherman v. British Leyland Motors, Ltd., 601 F.2d 429, 452 (9th Cir. 1979). When proceeding under Section 2, whether the claim is for attempt to monopolize, or for monopolization, a plaintiff can prevail by showing that the defendant engaged in anticompetitive conduct. See Twin City Sportservice, Inc. v. Charles O. Finley & Co., 676 F.2d 1291, 1308 (9th Cir. 1982); Greyhound Computer Corp. v. International Business Machines Corp., 559 F.2d 488, 503 (9th Cir. 1977), cert. denied, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978). The conduct behind D&S's claim was the operation of Cashway. Although the conduct can be best characterized as predatory pricing, this is not the classic case.
 
 
 13
 In economic terms, a defendant engages in predatory pricing if its marginal cost, the cost to produce one additional unit, exceeds the price of that unit. III P. Areeda & D. Turner, Antitrust Law p 715b (1978). Because of the difficulty in determining marginal cost, average variable cost is an acceptable substitute. Id. at p 715d. At a lower price, it would be irrational to continue to produce.
 
 
 14
 This circuit has chosen not to adopt the simple Areeda and Turner formula. Instead, "[A] plaintiff must prove that the anticipated benefits of defendant's price depended on its tendency to discipline or eliminate competition and thereby enhance the firm's long-term ability to reap the benefits of monopoly power." William Inglis & Sons Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014, at 1035 (9th Cir. 1982). If a plaintiff proves that the defendant's average variable costs exceeded its prices, the defendant must prove that those prices were justified without regard to their destructive effect on competition. Id. at 1036.
 
 
 15
 This is not a classic predatory pricing case because of the credit given Cashway for rental of equipment and purchase of materials, and the credit Cashway, in turn, extended to its customers. Available credit is a vital consideration in choosing a construction materials supplier. This factor confuses further the already inexact economic testimony.
 
 
 16
 D&S's expert found that Cashway's average variable costs exceeded its prices for the first nine months. He made assumptions about Cashway's costs, based on its financial statements. He added amounts to cover costs that should have been reflected on those statements but were not, including costs for equipment rental and materials. Using an alternate set of assumptions, he found Cashway's costs exceeding prices only in some of those months.
 
 
 17
 Sierra and Cyr challenge the expert's assumptions and calculations. They argue that it is nonsensical to find prices predatory in some months but not in others. They also assert apparently that the expert was not entitled to impute costs not reflected on the financial statements.
 
 
 18
 To the extent that appellants' arguments go to the weight of the expert's testimony, or his credibility, they are not proper subjects for review here. Appellants' jury argument should be made below.
 
 
 19
 To the extent that appellants attack the proof as insufficient, we remain unconvinced. Economics is an inexact science. Such inexactitude is not synonymous with legal insufficiency of the evidence, however. D&S presented expert testimony that supported their theory that unlawful, anticompetitive conduct occurred. An analysis of this testimony is admittedly made more complicated by the fact of special treatment which Cashway received from Cyr's other business interests through delayed billing.
 
 
 20
 Yet, Sierra and Cyr did not counter with sufficient evidence that their costs were other than as D&S's experts assumed. The failure to carry the burden rests with Sierra and Cyr.
 
 
 21
 The difficulty in taking account of the value of credit highlights the limits of pure economic analysis in predatory pricing cases. The evidence clearly supports an inference that Sierra and Cyr operated Cashway so that it could lure away D&S customers with favorable prices and credit and outlast D&S's more limited cash reserves. A simple application of the Areeda and Turner test might not give the proper emphasis to this evidence. By contrast, D&S did establish predatory pricing as defined in William Inglis.
 
 
 22
 We are unpersuaded by appellants' argument that Cashway's prices were set so low only to compete with the prices set by D&S. First, the evidence showed that Cashway underpriced D&S considerably, and offered much more attractive credit.
 
 
 23
 Second, appellants cite no authority allowing the defense of meeting the competition when a company's prices dropped below its average variable costs. Chillicothe Sand & Gravel Co. v. Martin Marietta Corp., 615 F.2d 427, 432 (7th Cir. 1980); California Computer Products, Inc. v. International Business Machines Corp., 613 F.2d 727, 742-43 (9th Cir. 1979); Transamerica Computer Co. v. International Business Machines Corp. (In re IBM Peripheral EDP Devices Antitrust Litigation); 481 F.Supp. 965, 996-1002 (N.D.Cal.1979); ILC Peripherals Leasing Corp. v. International Business Machines Corp., 458 F.Supp. 423, 433 (N.D.Cal.1978), aff'd sub nom. Memorex Corp. v. International Business Machines Corp., 636 F.2d 1188 (9th Cir. 1980), cert. denied, 452 U.S. 972, 101 S.Ct. 3126, 69 L.Ed.2d 983 (1981).
 
 
 24
 Appellants' reliance on California Computer Products and ILC Peripherals Leasing is misplaced. Neither case involved a defendant whose prices were proved to be below its marginal or average variable costs.
 
 
 25
 Pricing is predatory when a seller foregoes short-term profits in order to develop a market position from which it can later raise prices and recoup lost profits. William Inglis, 668 F.2d at 1031. When Cyr created Cashway and supported it through Sierra's monopoly power, he guaranteed that D&S would fail, leaving the entire market to Sierra.
 
 
 26
 Sufficient evidence supports the jury's conclusion that Cyr dba Cashway and Sierra set Cashway's prices, including the availability of attractive credit, not merely to meet D&S's competition, but to drive it out of business.
 
 III. Causation and Damages
 
 27
 Appellants have argued that, even if predatory pricing occurred, D&S did not prove that pricing proximately caused its injury. Where, as here, defendants have acted with intent to eliminate competition, the proof of resulting injury need not be overwhelming. Malcolm v. Marathon Oil Co., 642 F.2d 845, 855 (5th Cir.), cert. denied, --- U.S. ----, 102 S.Ct. 975, 71 L.Ed.2d 113 (1981); see also Fox West Coast Theatres Corp. v. Paradise Theatre Building Corp., 264 F.2d 602, 608 (9th Cir. 1958). D&S had evidence of both lost profits and lost sales. Sufficient evidence supports the jury's conclusion that appellants' action proximately caused D&S's injuries.
 
 
 28
 Appellants have challenged the measure of damages. An antitrust plaintiff is required only to provide the jury with some basis for a reasonable estimate of damage. Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 836 (9th Cir. 1982). D&S has done so. Given appellants' refusal to present a reasonable alternative measure, they may not now argue that those used are fatally speculative. Id. at 836-37.
 
 IV. Conduct of the Trial
 
 29
 Appellants have argued that the issue of capacity to conspire should have been submitted to the jury. Sierra and Cyr dba Cashway held themselves out as competitors and operated as separate economic entities. The trial judge correctly decided that a reasonable person could not conclude that Cyr dba Cashway and Sierra lacked the capacity to conspire.
 
 
 30
 Appellants have challenged the admission of evidence relating to Fry Redi-Mix, a 1960 creation of Cyr and of Sierra's predecessor. As with Cashway, it was subsidized by the monopolizer. Fry opened a year after a small competitor sprang up. The competitor soon went out of business as did Fry shortly thereafter. This evidence was admitted solely on the issue of intent.
 
 
 31
 An adequate foundation was established for its admission. The evidence was not too old to be probative in light of the striking similarity to the conduct now in dispute. The appellants did not show prejudice from the lapse of time. There was no abuse of discretion in the decision that the probativeness of the evidence outweighed any prejudice.
 
 
 32
 All other objections to the evidence and the instructions are without merit. Some were never properly presented and the rest are disposed of by the discussion of the relevant law above.
 
 V. Remittitur
 
 33
 Finally, appellants challenge the standard applied by the trial court in remitting the judgment. Although this circuit has not stated its position, others consistently approve remitting the judgment to the maximum amount sustainable by the proof. Ogilvie v. Fotomat Corp., 641 F.2d 581, 586 (8th Cir. 1981); Keyes v. Lauga, 635 F.2d 330 (5th Cir. 1981). This rule prevents the court's substitution of its judgment for that of the jury. Bonura v. Sea Land Service, Inc., 505 F.2d 665, 669 (5th Cir. 1974). We adopt this standard.
 
 
 34
 The trial judge remitted the judgment to the maximum amount sustainable by D&S's proof, and D&S accepted it. Appellants have shown no abuse of discretion.
 
 
 35
 We affirm the judgment.