106 F.3d 407
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
JESSEN ELECTRIC & SERVICE CO., Plaintiff-Appellant,
v.
GENERAL TELEPHONE COMPANY OF CALIFORNIA, Defendant,
and
GTE Directories Corporation, Defendant-Appellee.
JESSEN ELECTRIC & SERVICE CO., Plaintiff-Appellant/Cross-Appellee,
v.
GENERAL TELEPHONE COMPANY OF CALIFORNIA, Defendant,
and
GTE Directories Corporation, Defendant-Appellee/Cross-Appellant.
 Nos. 95-56175, 95-56176.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided Jan. 21, 1997.
 
 Before: BROWNING, THOMPSON and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The parties are familiar with the facts and we will not restate them here.
 
 
 3
 * JESSEN ELECTRIC'S ARGUMENTS ON APPEAL
 
 
 4
 A. The district court did not abuse its discretion by granting GTE's motion for a new trial on the issue of damages unless Jessen Electric accepted a remittitur. When a district court, after viewing the evidence in the light most favorable to the prevailing party, concludes that a damage award is excessive, it must grant a new trial on damages unless the prevailing party accepts a remittitur which the court considers justified. Fenner v. Dependable Trucking Co., Inc., 716 F.2d 598, 603 (9th Cir.1983). The district court may grant a new trial even though substantial evidence supports the jury's verdict. Oltz v. St. Peter's Community Hospital, 861 F.2d 1440, 1452 (9th Cir.1988); C.O. Hanson v. Shell Oil Co., 541 F.2d 1352, 1359 (9th Cir.1976), cert. denied, 429 U.S. 1074, 97 S.Ct. 813, 50 L.Ed.2d 792 (1977).
 
 
 5
 Here, the district court correctly determined that the $5,200,000 jury award was excessive. At the time GTE entered into the contracts with Jessen Electric, GTE could not have reasonably foreseen that a breach would cause Jessen Electric lost profits outside of Washington and Oregon. We agree with the district court that the evidence at trial showed that the written contracts related to advertising in Washington and Oregon directories only. They provided for the publication of specific ads in specific editions of certain neighborhood Oregon and Washington directories, and perhaps the right to renew those ads at the discounted rate.
 
 
 6
 The evidence does not support an interpretation that the written contracts provided a contractual right to a 35% discount in GTE directories nationwide. Kathy Huning's oral representations that the discount would be available to Jessen nationwide, did not, by themselves, give rise to a contractual right to that discount. Jessen's exchange with Huning was not sufficiently definite or specific to give rise to an enforceable contractual right under the written contracts to a nationwide 35% discount. See Ladas v. California State Auto. Ass'n, 19 Cal.App.4th 761, 770, 23 Cal.Rptr.2d 810, 814 (1993). See also Restatement (Second) of Contracts § 33(1) (1981) ("Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.").
 
 
 7
 It was not reasonably foreseeable to GTE that a breach of its contracts for advertising in Washington and Oregon might cause lost profits in Hawaii, Florida, Texas, Los Angeles and Vancouver. The only profits reasonably foreseeable to GTE upon entering the contracts were those generated from ads in the Washington and Oregon directories. Jessen Electric's own expert testified that Jessen Electric suffered $184,492 in damages as a result of not appearing in the Washington and Oregon directories. Accordingly, $184,492 was the maximum amount of damages reasonably foreseeable to GTE at the time it entered the written contracts. The district court properly found that the $5,200,000 damage award was excessive as a matter of law. See Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal.App.3d 442, 455-56, 277 Cal.Rptr. 40, 48 (1990).
 
 
 8
 B. The district court abused its discretion, however, by setting the amount of the remittitur at $35,392 rather than $184,492. The proper amount of a remittitur is the maximum amount sustainable by the evidence. D & S Redi-Mix v. Sierra Redi-Mix and Contracting Co., 692 F.2d 1245, 1249 (9th Cir.1982).
 
 
 9
 Jessen Electric's expert testified that GTE's breach caused Jessen Electric to suffer $184,492 in damages in Washington and Oregon alone. This figure was comprised of $35,392 for what the expert termed "loss of profits" from not appearing in the yellow pages, plus $149,100 for what the expert termed "loss of 35% discount value."
 
 
 10
 The district court concluded that Jessen Electric received "double damages" by receiving both lost profits and the value of the denied discount in Oregon and Washington. It limited the remittitur to the $35,392 for "loss of profits," concluding that Jessen "never purchased the advertising, thus, it should not be awarded monies equivalent to a discount it never received for advertising that it never purchased."
 
 
 11
 Both the $35,392 for "loss of profits" and the $149,100 for the "loss of 35% discount value," however, constituted lost profits recoverable by law. In calculating what he referred to as "loss of profits," Dr. Basset used the full retail cost of GTE advertising in calculating Jessen Electric's expenses. The jury found that Jessen Electric was entitled to a 35% discount on GTE advertising. The value of that discount, as Dr. Basset testified, would have reduced Jessen Electric's expenses and as a result would have increased its profits--profits Jessen Electric lost as a result of GTE's breach.
 
 
 12
 It is irrelevant that Jessen Electric never bought the advertising because in calculating lost profits, we consider the profits Jessen Electric would have earned had GTE not breached its contracts, i.e. had it provided the 35% discount. The maximum amount of damages supported by the evidence, therefore, was $184,492 for lost profits in Oregon and Washington, and that should have been the amount of the remittitur.
 
 
 13
 C. The district court did not abuse its discretion by limiting the evidence admissible at the new trial to evidence which would establish Jessen Electric's damages in Washington and Oregon. In granting the new trial, the district court correctly determined that Jessen could only recover damages for breach of the Washington and Oregon contracts. Evidence of damages suffered by the loss of advertising in these areas was the only evidence relevant to recoverable damages.
 
 
 14
 D. The district court did not err by granting GTE's Rule 50(a) motion for judgment as a matter of law on the issue of punitive damages and withdrawing the issue from the jury.
 
 
 15
 We review de novo the district court's grant of a motion for judgment as a matter of law. See Pierce v. Multnomah County, Or., 76 F.3d 1032, 1037 (U.S. 9th Cir.1996), petition for cert. filed, 65 U.S.L.W. 3001 (June 24, 1996) (No. 95-2062); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir.1994). Judgment as a matter of law is proper when the evidence, viewed in the light most favorable to the nonmoving party, permits only one reasonable conclusion. Pierce, 76 F.3d at 1037; Berry, 39 F.3d at 1057.
 
 
 16
 Under California law, a plaintiff cannot recover punitive damages for a breach of contract claim, even when the defendant's conduct in breaching was wilful, fraudulent, or malicious. Cal.Civ.Code § 3294(a); Slottow v. American Cas. Co. of Reading, Pa., 10 F.3d 1355, 1361 (9th Cir.1993); Consolidated Data Terminals v. Applied Digital Data Systems, Inc., 708 F.2d 385, 399 (9th Cir.1983); Myers Bldg. Indus. v. Interface Technology Inc., 13 Cal.App.4th 949, 959, 17 Cal.Rptr.2d 242, 248 (1993). Thus, Jessen Electric was not entitled to punitive damages under its breach of contract claim.
 
 
 17
 As to the tort claims, the punitive damage issue is moot because, as we discuss infra, GTE is not liable as a matter of law for the torts of intentional interference with prospective economic advantage or unfair competition.
 
 II
 GTE'S ARGUMENTS ON CROSS-APPEAL
 
 18
 A. The district court did not err in denying GTE's renewed motion for judgment as a matter of law as to GTE's liability for breach of contract. The evidence was sufficient to support a reasonable conclusion that GTE breached its written contracts by refusing to renew Jessen Electric's 35% discount in the Washington and Oregon directories.
 
 
 19
 GTE contends that the evidence failed to support a claim for breach of the written contracts because parol evidence was improperly used to contradict or add additional terms to the written contracts to include directories not mentioned in the contracts. We disagree.
 
 
 20
 Jessen Electric did not seek to contradict or add additional terms to its contracts with GTE. Rather, it sought to interpret the meaning and effect of an existing term of the contracts. Extrinsic evidence is admissible "to explain an extrinsic ambiguity or otherwise interpret the terms of the agreement...." Cal.Civ.Proc.Code § 1856(g) (West 1983). Extrinsic evidence may be considered to ascertain any meaning to which the instrument's language is reasonably susceptible. Golden West Baseball Co. v. City of Anaheim, 25 Cal.App.4th 11, 21, 31 Cal.Rptr.2d 378, 385 (1994); Mission Valley East, Inc. v. County of Kern, 120 Cal.App.3d 89, 98, 174 Cal.Rptr. 300, 306 (1981).
 
 
 21
 The phrase "Disc. Prog. 016 35%" appears on the face of each of the written contracts. GTE argued this phrase meant that Jessen Electric was entitled to a one-time 35% discount for the particular directory listed. Jessen Electric argued the phrase meant that it had certain rights under a program called Discount Program 16, including the right to renew at a 35% discount so long as it did not decrease or cancel its advertising. Given this ambiguity in the meaning and effect of the term "Disc. Prog. 16-35%," extrinsic evidence was properly admitted to interpret its meaning.
 
 
 22
 The extrinsic evidence properly admitted included (1) the GTE Discount Manual which specifically provided that under Discount Program 16, "Discounts are applied item-by-item and continue each year unless advertising is decreased or cancelled," and (2) Kathy Huning's statements to Jessen to the same effect. Given this evidence, reasonable minds could differ as to whether GTE breached its contracts with Jessen Electric by refusing to provide the 35% discount in the Washington and Oregon directories so long as Jessen did not reduce or cancel its advertising. Thus, the district court properly denied GTE's renewed motion for judgment as a matter of law on its liability for breach of contract.
 
 
 23
 Contrary to GTE's argument, there was consideration. Under the contracts as interpreted by the parol evidence, GTE would continue to provide a 35% discount to Jessen Electric so long as Jessen Electric did not reduce the level of advertising it purchased.
 
 
 24
 B. The district court erred, however, in denying GTE's renewed motion for judgment as a matter of law as to GTE's liability for intentional interference with prospective economic advantage.
 
 
 25
 In Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal.4th 376, 45 Cal.Rptr.2d 436, 902 P.2d 740 (1995), the California Supreme Court announced a retroactive requirement that the conduct constituting this tort be independently "wrongful." See id. at 392-93, 45 Cal.Rptr.2d at 447, 902 P.2d at 751. In Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co., 47 Cal.App.4th 464, 54 Cal.Rptr.2d 888 (1996), the court held that a breach of contract cannot constitute the "wrongful" conduct required for the tort of intentional interference with prospective economic advantage. The court stated:
 
 
 26
 A contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business.
 
 
 27
 Id. at 479, 54 Cal.Rptr.2d at 896. See also Khoury v. Maly's of Cal., Inc., 14 Cal.App.4th 612, 618, 17 Cal.Rptr.2d 708, 711-12 (1993).
 
 
 28
 Putting the breach of contract aside, there was insufficient evidence that GTE engaged in wrongful conduct designed to interfere with Jessen Electric's prospective economic advantage. Thus, we conclude as a matter of law that GTE is not liable for the tort of intentional interference with prospective economic advantage.
 
 
 29
 C. The district also erred in denying GTE's renewed motion for judgment as a matter of law as to its liability for unfair competition. At the time the conduct complained of occurred, unfair competition was defined as "unlawful, unfair or fraudulent business practice." Cal.Bus. & Prof.Code § 17200 (West 1987). Here, there was insufficient evidence that GTE's wrongful conduct was part of a practice of unlawful or unfair activity. Jessen Electric attacks only GTE's refusal to provide it with the 35% discount that GTE gave to others.
 
 
 30
 D. Finally, the district court did not err in awarding Jessen Electric attorney fees under the contract even though the attorney fee provision appeared on the unfaxed back side of the contract. The front side of the contract which was faxed to Jessen stated: "ADVERTISER ACKNOWLEDGES HE/SHE RECEIVED A DUPLICATE COPY OF THIS AGREEMENT AND HAS READ, UNDERSTANDS AND AGREES TO THE TERMS AND CONDITIONS ON THE REVERSE INCLUDING LIMITATION OF LIABILITY PARAGRAPH NO 6." This statement incorporates by reference the attorney fee provision because GTE and Jessen Electric had entered into other contracts using GTE's standard form contract and both parties were or should have been aware of the terms on the unfaxed backside.
 
 CONCLUSION
 
 31
 We affirm the district court's rulings except in the following respects: (1) we increase the damage award in favor of Jessen Electric to $184,492; and, (2) we reverse the judgment against GTE as to its tort liability for intentional interference with prospective economic advantage and for unfair competition. This reversal of GTE's tort liability, however, does not affect the damages recoverable by Jessen Electric. Any damages attributable to GTE's tort liability would not increase the damages for which it is liable on the breach of contract claim. We remand this case to the district court to correct the judgment by deleting all tort liability of GTE and by changing the damage award in favor of Jessen Electric and against GTE on the contract claim from $35,392 to $184,492.
 
 
 32
 AFFIRMED in part; REVERSED in part; and REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3