534 F.2d 836
 The PEOPLE OF the STATE OF CALIFORNIA, acting By and Through
the DEPARTMENT OF PUBLIC WORKS, Plaintiff-Appellee,
v.
The ITALIAN MOTORSHIP ILICE, her furniture, tackle, apparel,
etc., Defendant and Cross-Appellant,
and
Navigazione Arenella, Inc., a corporation, et al.,
Defendants-Appellees.
 Nos. 74-1559, 74-1580.
 United States Court of Appeals,
Ninth Circuit.
 March 5, 1976.
 
 1
 D. Thomas McCune (argued), of Lillick, McHose & Charles, San Francisco, Cal., for appellant and cross-appellee.
 
 
 2
 Ronald I. Harrison (argued), Sacramento, Cal., for appellee and cross-appellant.OPINION
 
 
 3
 Before BROWNING and TRASK, Circuit Judges, and SWEIGERT,* District Judge.
 
 
 4
 SWEIGERT, District Judge.
 
 NATURE OF THE ACTION
 
 5
 Plaintiff, State of California, acting through its Department of Transportation, brought this admiralty action against defendants, the Motor Ship Ilice; Navigazione Arenella, S.p.A., her owner and operator; Captain Leo H. Wuesthoff, her compulsory pilot; and Captain Giuseppe d'Esposito, her master; alleging that the ship collided with the State's Rio Vista Bridge due to the negligence of the defendants, the ship Ilice, and the other defendants in charge of her navigation and seeking damages in the amount of $710,000 for the damage resulting to its bridge.
 
 
 6
 The record shows that the lift span of the bridge is operated from a two-story control house on the roof of which is a bell which, when operated continuously, rings at certain intervals. Two foghorns are located under the span within the supporting pier the west tower one horn pointing upriver, the other downriver. These horns, when operating, sound a simultaneous blast about three times per minute.
 
 
 7
 At the time of the collision, the operation of the bridge was governed by a regulation, promulgated pursuant to federal statute by the Army Corps of Engineers, providing in pertinent part that:
 
 
 8
 "When fog prevails by day or night, the drawtender, after repeating the call signal (for the opening of the bridge) shall toll a bell continuously during the approach and passage of a vessel." (33 C.F.R. 203.710(b)(3) (1967)).
 
 
 9
 Other regulations of the Sacramento-Yolo Port District, into whose waters the Ilice was sailing, are involved. This Port District was formed for local municipal purposes under the enabling provisions of the California Harbors and Navigation Code, which provides that such port districts may require vessels to use a compulsory pilot. The port district here involved did require vessels to use a pilot commissioned by the district. (Port of Sacramento's Terminal Tariff No. 1, Item 60(a)). Defendant, Captain Wuesthoff, was the pilot in charge of the navigation of the Ilice at the time of the collision.
 
 
 10
 After a court trial the district court found that the failure of the State to ring the bell on the control house of the bridge during the approach and passage of the Ilice, as required by applicable Corps of Engineers' regulations, was negligent, unlawful and a statutory fault to which the so-called Pennsylvania Rule applied; that the State of California did not carry its burden of proof under the Pennsylvania Rule; further, that the continuous tolling of the bell would have assisted the navigation of the Ilice and that the failure to toll the bell proximately contributed to the collision.
 
 
 11
 The court also found that the act of the compulsory pilot, Wuesthoff, in leaving the radar screen to observe a buoy, was negligent because he knew, or should have known, that he would not be able to readjust his eyes to the radar screen in time to ascertain the ship's position, and he would not know immediately that the ship had swung out of the channel.
 
 
 12
 The district court found, however, that there was no negligence on the part of Captain d'Esposito or any other crew member and that Captain d'Esposito's decision, in reliance on the pilot's advice, not to anchor the ship, was reasonable.
 
 
 13
 Upon these findings the trial court determined that the fault for the accident lay equally with the plaintiff State and the defendant pilot, Wuesthoff, and granted judgment in favor of the State against the pilot, Wuesthoff, and the ship Ilice for one-half the damages to the State's bridge.
 
 
 14
 The court concluded, however, that Navigazione Arenella, S.p.A., owner of the Ilice, was not personally responsible for the negligence of the compulsory pilot, Wuesthoff, and, therefore, granted judgment in favor of that individual defendant.
 
 
 15
 Plaintiff, State of California, has appealed, contending that the above findings are so unsupported by the evidence as to be clearly erroneous; also, that the trial court abused its discretion in denying the State's motion to introduce additional testimony that the ringing of other bells on the bridge met the requirements of the applicable Corp's regulation; also that the court erroneously applied the Pennsylvania Rule rather than the Major-Minor Fault Rule.
 
 
 16
 Defendant, Ilice, has cross-appealed, contending that the trial court's findings of fact have substantial support in the evidence and are not clearly erroneous; contending also, however, that the trial court erred in concluding that the ship, Ilice, is responsible for the negligence of the compulsory pilot and jointly liable with him for one-half the State's damages.
 
 
 17
 So far as the findings of fact are concerned, we are satisfied that all of them have substantive support in the evidence, that none of them is clearly erroneous, and that they should not be disturbed.
 
 
 18
 The State of California claims error in the finding of negligence on its part because, argues the State, the foghorns were sounding and this constituted a substantial compliance with the regulations.
 
 
 19
 However, the tolling of a bell was clearly required by the regulation, which makes no mention of foghorns, and, under the cases, substitution of foghorn sounding would not amount to compliance with the specific requirements for the tolling of a bell. See The Pennsylvania v. Tropp, 86 U.S. (19 Wall.) 125, 137, 22 L.Ed. 148, 151 (1874).
 
 
 20
 The State of California also contends that the trial court abused its discretion in denying plaintiff's belated motion, (made nearly eight months after trial and submission of the liability issue and after the trial judge had indicated his decision on that issue) for leave to introduce new evidence to the effect that, although the bell atop the control tower was not tolling, three other bells, located at the bridge's approaches, were sounding; such a sounding of other bells, plaintiff argues, would have amounted to compliance with the regulation. We cannot say that denial of plaintiff's motion under these circumstances constituted an abuse of discretion, especially in view of the fact that such new evidence would have opened up an entirely new theory of compliance with the regulation.
 
 
 21
 The State further contends that in any event there already is testimony in the record (testimony of witness Higgins who was permitted by the trial court to testify at the time of and in connection with plaintiff's belated motion) supporting plaintiff's offer of proof in the above respect.
 
 
 22
 Such testimony, however, even if considered to be part of the trial record on the issue of liability, would not support plaintiff's contention that the ringing of these other bells would have been compliance with the regulation. The State's own witness, Spencer, the bridge tender, had testified at the trial that the bell atop the control house was the bell referred to in the regulation. Further, the testimony of Higgins, given later on plaintiff's motion, indicated that these other bells were primarily intended for warning land traffic that the bridge was open.
 
 
 23
 Finally, State of California contends that it was error for the trial court to apply the Pennsylvania Rule rather than the Major-Minor Fault Rule to the alleged statutory fault.
 
 
 24
 The so-called Pennsylvania Rule is to the effect that when a vessel or a stationary object, e. g., the bridge in question, is in violation of a statutory rule intended to prevent collisions, the burden rests upon the violater to show, not merely that the fault might not have been a cause of the collision or that it probably was not, but that it could not reasonably have been. States SS Co. v. Permanente SS Corp., 231 F.2d 82 (9th Cir. 1956), Waterman SS Corp. v. Gay Cottons, 414 F.2d 724, modified on rehearing, 419 F.2d 372 (9th Cir. 1969).
 
 
 25
 The Major-Minor Fault Rule, stemming from The Great Republic, 90 U.S. (23 Wall.) 20, 23 L.Ed. 55 (1874), establishes a rebuttable presumption in favor of a vessel or an object at minor fault that the other party at major fault was the exclusive cause of the collision.
 
 
 26
 We are satisfied that the trial court's findings of statutory fault on the part of the State and failure by the State to meet the burden of proof required by the Pennsylvania Rule are supported by substantive evidence, and are not clearly erroneous and should not be disturbed.
 
 
 27
 The State of California contends, however, that the court should have applied the Major-Minor Fault Rule instead of the Pennsylvania Rule as if these two evidentiary rules are inconsistent one over the other. We see no such inconsistency.
 
 
 28
 The trial court's findings, based on the Pennsylvania Rule, establish only that the State's statutory fault was one of the proximate causes of the collision not necessarily that it was the sole cause. In the pending case, the court further found that the negligence of the defendants, the compulsory pilot and the ship Ilice, also proximately contributed to the collision.
 
 
 29
 The Major-Minor Fault Rule has to do with a determination whether the fault of one of the parties was minor, as compared to the fault of the other, and, if so, whether such minor fault could have been a cause of the collision at all. It raises a presumption that it could not unless the other party at major fault meets the burden of rebutting such presumption by showing that the fault of the other party, although minor, did in fact also contribute as a proximate cause of the collision.
 
 
 30
 In the pending case, although the trial court made no express finding as to whether the fault of the State was minor as compared to the fault of the pilot and the ship, it did find that the fault of the State was in fact one of the proximate causes of the collision a finding which necessarily negates the possibility that the fault of the defendants, pilot and ship, even though major as compared to the fault of the State, could have been the exclusive cause of the collision.
 
 
 31
 It will be noted that both of the foregoing rules are rules of evidence, presumption and burden of proof, and are to be distinguished from the admiralty Mutual Fault-Equal Contribution Rule which is a substantive rule requiring that, when there is a mutual fault (as in the pending case), the damages must be equally allocated regardless of the degrees of comparative fault. This rule stemming from The Pennsylvania, 86 U.S. (19 Wall.), 125, 22 L.Ed. 148 (1874), was long followed by the Supreme Court until its recent decision in United States v. Reliable Transfer Co., 421 U.S. 397, 95 S.Ct. 1708, 44 L.Ed.2d 251 (May 19, 1975), overruling The Pennsylvania and its progeny, abolishing the Mutual Fault-Equal Contribution Rule and substituting a new rule requiring liability for collision damage to be allocated among the parties proportionately to the comparative degree of their fault, provided, however, that if it is not possible to establish the degree of the respective faults, or if it appears that the faults are equal, the liability shall be apportioned equally.
 
 
 32
 This decision came down after the trial of the pending case, even after the filing of the briefs on this appeal. In supplementary briefs, filed at the court's request for briefs concerning the effect of Reliable Transfer on the pending case, none of the parties questioned the retroactive applicability of U. S. v. Reliable Transfer, to the pending case.[1]
 
 
 33
 Plaintiff, State of California, contends that the Reliable Transfer ruling requires that, if the trial court's finding of mutual fault is affirmed, then this case should be remanded for a finding on the issue of comparative fault.
 
 
 34
 Defendants contend only that there is no need for such a remand because the trial court here did make a finding on the issue of comparative fault, i. e., "the court finds that the casualty and resulting damage to plaintiff's bridge were the direct and proximate result of the equal and concurrent negligence of plaintiff and defendant Wuesthoff and, accordingly, defendant Wuesthoff and the Ilice are liable to plaintiff for one-half of all damages which plaintiff sustained by reason of such casualty." (C.T. pp. 189-190) (Emphasis added). This finding appears under the head of "Conclusions of Law." There is no such finding under the head of "Findings of Fact."
 
 
 35
 It is possible that this stated "finding" of "equal" fault was intended by the trial court to be a finding of fact on the issue of the comparative degree of the fault of the parties and its determination that the degrees were equal within the meaning of U. S. v. Reliable Transfer. Such intent, however, is doubtful in view of the fact that U. S. v. Reliable Transfer, (with its change of longstanding law) had not yet been announced at the time the findings were made.
 
 
 36
 On the other hand it is possible, indeed more probable, as State of California appears to assume, that this so-called finding was really intended by the court only as a conclusion that, since the court had previously found mutual fault, liability for the damage would have to be equally divided between the parties under the old rule regardless of comparative degree of fault.
 
 
 37
 In order to remove any doubt concerning the meaning of the trial court's "finding" of equal fault, this case will be remanded with directions to determine comparative fault within the meaning of U. S. v. Reliable Transfer, supra, and make new findings and conclusions accordingly.
 
 
 38
 On its appeal, defendant ship, the Ilice, further contends that it should not be held liable in rem to the State for the negligence of the compulsory pilot, a public officer whose use was compelled, the ship contends, by an agency of the State.
 
 
 39
 There is no dispute that the ship's use of the pilot in our pending case was compulsory. It is well settled that the owner of a vessel is not liable, personally, for the negligence of a compulsory pilot because the element of compulsion eliminates the respondeat superior nexus which would normally serve as a basis for imputing a pilot's negligence to the ship owner, Homer Ramsdell Transp. Co. v. La Compagnie Generale Transatlantique, 182 U.S. 406, 21 S.Ct. 831, 45 L.Ed. 1155 (1901); U. S. v. SS President Van Buren,490 F.2d 504, 506 (9th Cir. 1973); City of Los Angeles v. Grace SS Co.,116 Cal.App. 237, 2 P.2d 401.
 
 
 40
 However, it has also been held, since the Supreme Court's decision in The China, 74 U.S. (7 Wall.) 53, 58, 67, 19 L.Ed. 67, 70, 72 (1868), that, notwithstanding personal non-liability of the ship owner in such a case, the ship itself remains liable in rem for damages arising out of a collision due to the pilot's negligence even though the use of the pilot is compulsory.
 
 
 41
 Harrison v. Hughes, 125 F. 860, 868-869 (3d Cir. 1903), citing The China and its progeny, succinctly states its rule and the theory upon which it is based:
 
 
 42
 ". . . It is admitted that, at common law, no action can be maintained against the owner of a vessel, for the fault of a compulsorily taken pilot, as, in such case, the pilot is in no sense the agent or servant of the owner; but, although the same doctrine holds in England, both at common law and in admiralty, a different view of the liability of the ship is taken in admiralty cases in this country. The China v. Walsh, 7 Wall. 53, 19 L.Ed. 67 . . . . The theory of the admiralty law in this country in such cases, is that the collision impressed upon the wrongdoing vessel a maritime lien, which the vessel carries with it into whosesoever hands it may come. The vessel is treated, according to this theory, as the guilty thing. It is the res, to which fault is imputable, and which is held to respond in damages. The responsibility of the owners, as owners, and the law of agency, as applicable to the employment of a pilot, do not come into consideration."
 
 
 43
 The ship, Ilice, contends that this rule of The China is "an irrational fiction of the personification of the vessel", pointing out that in U. S. v. Bissett-Berman Corp., 481 F.2d 764 (1973) our Ninth Circuit has stated (p. 771) that "the authority of The China, 74 U.S. (7 Wall.) 53, 19 L.Ed. 67 (1868), for the proposition that an in rem libel against the ship may be maintained when an action against its owner or operator can not, has been weakened if not destroyed by subsequent cases."
 
 
 44
 We regard the above-quoted language as dicta so far as the validity of the Supreme Court's China rule is concerned.[2]
 
 
 45
 In support of this dicta that the rule of The China had been weakened, if not destroyed, Bissett cited three cases Ramos v. Beauregard, Inc., 423 F.2d 916 (1st Cir.) cert. denied 400 U.S. 865, 91 S.Ct. 101, 27 L.Ed.2d 104 (1970); Alcoa Steamship Co. v. Rodriguez, 376 F.2d 35 (1st Cir.) cert. denied 389 U.S. 905, 88 S.Ct. 215, 19 L.Ed.2d 219 (1967); and Noel v. Isbrandtsen Co., 287 F.2d 783 (4th Cir.) cert. denied 366 U.S. 975, 81 S.Ct. 1944, 6 L.Ed.2d 1264 (1961). None of those cases are actually in point with the issue in our pending case and, further, two of them did not so much as even mention The China. In the third case cited, Noel v. Isbrandtsen, supra, the court, far from casting doubt on The China, expressly cited and recognized The China as authority for the proposition that, although the owner of a ship is under no personal liability because a compulsory pilot is not his agent, the ship, itself, remains liable in rem if the compulsory pilot has been at fault (287 F.2d at 786).[3]
 
 
 46
 The Supreme Court itself has regularly cited The China as valid authority up to at least 1959[4] and we have not been cited to any Supreme Court case in which that court has criticized or questioned The China.
 
 
 47
 It is stated in Bissett, supra, that the Supreme Court in Guzman v. Pichirilo, 369 U.S. 698, 82 S.Ct. 1095, 8 L.Ed.2d 205 (1962), and in Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), "refused to decide the issue." However, these cases did not involve the collision-compulsory pilot-negligence issue here involved, and in neither case did the Supreme Court even mention The China.[5]
 
 
 48
 We conclude that there is no basis on this record for holding that the Supreme Court's ruling in The China has been weakened or destroyed. Even if the wisdom of that rule be subject to question, if The China is to be overruled for that reason, it should be done by the Supreme Court itself.
 
 
 49
 In Standard Oil v. U. S., 27 F.2d 370, 372 (S.D.Ala.1928), cited by the ship, Ilice, as authority in her favor, the District Court actually cited and followed The China to the effect that in admiralty it is no defense to a vessel that a tort committed by her was due to the negligence of a pilot she was compelled to take on board; further, the court noted, The China had not (up to 1928) been reversed, modified or limited though often cited.
 
 
 50
 The ship, Ilice, contends that, whatever may be the justification for application of The China rule as between a ship and innocent third persons whose property has been damaged through fault of a compulsory pilot, the rule has been unjustly applied in this case because here the State of California, itself, had something to do with the employment or direction of the negligent pilot and was in some way responsible for him (within the meaning of certain language contained in Standard Oil v. U. S., supra, at p. 373); that the State was in effect the agency that required the use of the pilot whose negligence, as found, was a cause of damage to the State's own property; that, therefore, neither the owners of the Ilice, nor the ship itself, should be held responsible for damage to the State's bridge, citing The Joseph Vaccaro, 180 F. 272 (E.D.La.1910). (But see The Griffdu v. U. S., infra, p. 313, criticizing this case for not at least imposing in rem liability on the ship).
 
 
 51
 On the other hand, the State contends that its only connection with the compulsory pilot was the State's general enabling law i. e., its Harbors and Navigation Code authorizing the formation of local port districts. The Port District, argues the State, is not the State of California, nor an agency of the State, nor a political subdivision of the State (e, g., a city or county); rather, the State contends, it is an independent local agency created and used for the promotion of local advantage and convenience, citing Villanazul v. City of Los Angeles, 37 Cal.2d 718, 235 P.2d 16 (1951); further, argues the State, it exercises no control over the employment or conduct of Port District pilots who, whether compulsory or otherwise, are independently and solely responsible for the performance of their duties and are not even agents of the agency which licenses them, citing United Fruit Co. v. Mobile Towing & Wrecking Co., D.C., 177 F.Supp. 297, nor of the dock commission which pays them, citing Standard Oil Co. v. U. S., 27 F.2d 370, 374 (1928), nor of the Pilots' Association of which they are members, citing Guy v. Donald, 203 U.S. 399, 27 S.Ct. 63, 51 L.Ed. 245 (1906), and Griffdu v. U. S., 25 F.2d 312 (S.D. Texas 1928).
 
 
 52
 We conclude that the State of California is not precluded from recovery of its share of damages, determined according to the comparative fault rule, by the mere fact that the Port District was formed under the State Harbors and Navigation Code.
 
 
 53
 For the reasons above set forth, the judgment is affirmed in all respects except that the case is hereby remanded for the purpose already hereinabove set forth.
 
 
 
 *
 The Honorable William T. Sweigert, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 As a general rule the effect of a judicial overruling of a prior decision and a refusal to abide by the precedent there laid down is retrospective, as well as prospective. 21 C.J.S. Courts § 194; Fleming v. Fleming, 264 U.S. 29, 44 S.Ct. 246, 68 L.Ed. 547 (1924); Leggs Estate v. Commissioner of Internal Revenue, 114 F.2d 760 (4th Cir. 1940); Peterson v. John Hancock Co., 116 F.2d 148 (8th Cir. 1940); Sunray Oil Co. v. Commissioner of Internal Revenue, 147 F.2d 962 (10th Cir. 1945), cert. denied 325 U.S. 861, 65 S.Ct. 1201, 89 L.Ed. 1982
 
 
 [2]
 Bissett, affirming a summary judgment for defendant, was a suit brought by the United States against its government contractor alleging (among other claims) negligence by the contractor in handling a vessel that caused damage in the course of construction of a government installation. The court, having held that the contractor had not been negligent (within the meaning of his contract with the government) and that in fact, the contractor had been expressly released by the United States from any such liability, went on to consider a United States' contention that, notwithstanding absence of in personam liability, the court should nevertheless impose in rem liability upon the vessel on the ground that the contractor was in complete control of the vessel likening his situation to that of a "compulsory pilot". It was in the course of rejecting this contention that the above-quoted language, concerning The China, was used by the court. Obviously, however, that portion of the decision was dicta, because the court, having held that there was no negligence on the part of the contractor (or on the part of the crew) in the navigation of the vessel, could not have imposed in rem liability upon the vessel under any known admiralty rule The China or otherwise
 
 
 [3]
 Six months after U. S. v. Bissett, the Ninth Circuit in U. S. v. SS President Van Buren, 490 F.2d 504, 506 (9th Cir. Dec. 13, 1973), holding that a ship owner was not personally responsible for a non-compulsory pilot's negligence, was, nevertheless, still citing and recognizing The China as holding that, in the case of a compulsory pilot's negligence, even though the ship owner was not liable in personam, the vessel itself would still be liable in rem
 
 
 [4]
 See In Re East River Co., 266 U.S. 355, 367, 45 S.Ct. 114, 115, 69 L.Ed. 324, 327 (1924); Canadian Aviator, Ltd. v. U. S., 324 U.S. 215, 224, 65 S.Ct. 639, 644, 89 L.Ed. 901, 908 (1944); Bisso v. Inland Waterways Corp., 349 U.S. 85, 94, 75 S.Ct. 629, 634, 99 L.Ed. 911, 919 (1955); Continental Grain Co. v. Barge FBL-585, 364 U.S. 19, 37, 80 S.Ct. 1470, 1480, 4 L.Ed.2d 1540, 1551 (1960) (in a dissenting opinion)
 
 
 [5]
 These cases (like the Court of Appeals cases noted in Bissett, supra ), were suits by longshoremen seeking in personam and in rem relief for personal injuries, in which lower courts had held that for various reasons (an owner's charter demise in Guzman and the Harbor Workers Compensation Act in Reed ) the owner could not be held liable in personam. The Supreme Court reversed these holdings and in Reed (p. 412, 83 S.Ct. p. 1351, 10 L.Ed.2d p. 451) stated, "We find it unnecessary to decide whether a ship may ever be held liable for unseaworthiness where no personal liability could be asserted . . .."