690 F.2d 722
 1984 A.M.C. 1323
 Jeanette R. KANE, as personal representative of Francis
Michael Kane, and as Administratrix of the Estate
of Francis Michael Kane, Deceased, Plaintiff,
v.
HAWAIIAN INDEPENDENT REFINERY, INC., Defendant-Appellee,
v.
AEGEAN SEAWAYS CO., S.A., and Coulouthros, Ltd.,
Defendants-Appellants.
 No. 81-4356.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 14, 1982.
Decided Oct. 20, 1982.
 
 David W. Proudfoot, Honolulu, Hawaii, for defendants-appellants.
 Alexander C. Marrack, Hoddick, Reinwald, O'Connor & Marrack, Honolulu, Hawaii, for defendant-appellee.
 Appeal from the United States District Court for the District of Hawaii.
 Before WISDOM*, SNEED and FARRIS, Circuit Judges.
 SNEED, Circuit Judge:
 
 
 1
 This is an appeal from the district court's judgment against Aegean Seaways Co., S.A., and Coulouthros, Ltd. (hereinafter, collectively, "Aegean"), awarding contribution for money paid in settlement by Hawaiian Independent Refinery, Inc. ("HIRI"), and denying Aegean's cross-claim for indemnity. We affirm.
 
 FACTS
 
 2
 This case stems from the death of Francis Kane, a lineboat crewman, who was killed during the mooring of Aegean's tanker at an offshore petroleum products terminal operated by HIRI. Aegean and HIRI settled the claims brought by Kane's widow but reserved their cross-claims against each other for contribution and indemnity. After trial on the cross-claims, the district court found Aegean ten percent and HIRI twenty-five percent contributorily negligent.
 
 
 3
 Aegean's liability was based in part upon the negligence of a mooring master assigned by HIRI to assist the mooring of Aegean's vessel. Aegean maintained at trial and now contends that the mooring master's negligence should have been imputed to HIRI based upon an implied warranty of workmanlike service.
 
 
 4
 The district court rejected this contention, citing a pilotage clause in the "Pilotage Service Statement" presented to and signed by the master of Aegean's vessel prior to mooring. The clause provided: "It is agreed that in performing the Pilotage Services stated above, the Pilot acts as a servant of the vessel." Finding that this express provision superseded any contrary implied warranty, the district court concluded that the mooring master became the servant of the vessel upon boarding. Aegean appeals these findings.
 
 DISCUSSION
 
 5
 The negligence of a mooring master is generally imputed to his employer rather than to the shipowner where the employer hires, trains, and assigns the mooring master, and requires the shipowner to use his services. The China v. Walsh, 74 U.S. (7 Wall.) 53, 67-68, 19 L.Ed. 67 (1869); California v. The Italian Motorship Ilice, 534 F.2d 836, 843 (9th Cir. 1976); City of Long Beach v. American President Lines, Ltd., 223 F.2d 853, 857 (9th Cir. 1955). But see Kitanihon-Oi S.S. Co. v. General Constr. Co., 678 F.2d 109, 111-12 (9th Cir. 1982) (no imputation of negligence to Port which merely commissioned and did not hire or pay pilots). This general rule is inapplicable where the parties have agreed to shift their liability with a pilotage clause. See Sun Oil Co. v. Dalzell Towing Co., 287 U.S. 291, 294-95, 53 S.Ct. 135, 136, 77 L.Ed.2d 311 (1932); United States v. SS President Van Buren, 490 F.2d 504, 507-09 (9th Cir. 1973).
 
 
 6
 Aegean argues that the pilotage clause is invalid because it is not sufficiently clear or specific. We do not agree. The district court found the clause to be "one that is accepted throughout the maritime industry and is known to mean that the vessel or its owners cannot recover from the pilot for his negligence." Excerpt of Record at 123. See Federal Steam Navigation Co. v. The Tugs Savannah and Robert W. Groves, 305 F.Supp. 1293, 1298 (S.D.Ga.1969). A similar clause was upheld by the Supreme Court in Sun Oil Co., 287 U.S. at 294-95, 53 S.Ct. at 136.
 
 
 7
 Aegean alternatively contends that even if the clause is sufficiently clear and specific, it should be held invalid because it was not freely bargained for and was presented at such a late moment that Aegean had no choice but to accept it. In support of this contention, Aegean relies, inter alia, upon the following stipulations and findings: 1) all vessels mooring at HIRI's berths were required to use the services of one of its mooring masters; 2) Aegean did not request the services of a mooring master; 3) the pilotage clause and general instructions were given to Aegean only after the mooring master boarded the vessel; 4) there were no prior dealings between the parties. There was also evidence at trial that the clause was not explained to the vessel's captain and that he spoke little English. Aegean contends that these facts distinguish this case from Sun Oil where the Supreme Court found nothing to suggest that the parties were not on an equal footing, and noted the absence of any monopoly or compulsion to accept the pilotage services. Id. at 294, 53 S.Ct. at 136.
 
 
 8
 While compulsory pilotage may invalidate a pilotage clause in particular circumstances, see City of Long Beach, 223 F.2d at 856-57, the degree of compulsion here does not justify such a remedy. The use of HIRI's mooring masters was not required by law, but was merely a condition to doing business with HIRI. The clause was not motivated by HIRI's monopolistic bargaining position, but rather by HIRI's understandable and reasonable reluctance to risk responsibility for damage to a costly vessel moving under its own power. See Transpacific Carriers Corp. v. The Tug Ellen F. McAllister, 336 F.2d 371, 373-76 (2d Cir. 1964); Federal Steam Navigation Co., 305 F.Supp. at 1297.
 
 
 9
 Also compulsion does not exist merely because Aegean was not notified until the last minute that the mooring master must be used, or because the pilotage clause was not fully explained to its captain. The district court found the pilotage clause to be one accepted in the industry. It is not necessary that the captain have specific knowledge of the exact terms of the pilotage clause or that he or the shipowner expressly assent to this clause separately. See Federal Steam Navigation Co., 305 F.Supp. at 1298. All parties were familiar with the custom of the industry regarding liability of pilots and mooring masters and cannot be heard to say that they were ignorant of the practice of attributing mooring masters' negligence to the shipowner.
 
 
 10
 Aegean also argues that public policy considerations compel placing liability on the company that hires, trains, assigns, and pays the harbor masters, and requires their use on all incoming vessels. We find this argument unpersuasive. The Supreme Court has recognized and underscored the distinction between a release-from-negligence clause, which public policy opposes, and a pilotage clause of the type at issue here. Compare Bisso v. Inland Waterways Corp., 349 U.S. 85, 94, 75 S.Ct. 629, 634, 99 L.Ed. 911 (1955), with Sun Oil, 287 U.S. at 294, 53 S.Ct. at 136. As noted previously, HIRI has a legitimate interest in limiting its liability for damage caused by a large vessel moving under its own power. Imposition of such liability would have negligible deterrent value since HIRI already has ample incentive to avoid accidents in its own products terminal. See Kitanihon-Oi, 678 F.2d at 112. Use of HIRI's mooring masters-who acquire a specialized local knowledge and expertise-benefits both HIRI and Aegean. See id.
 
 
 11
 Moreover, there are substantial policy interests in permitting the parties to allocate risks among themselves, both in terms of acquisition and retention of appropriate insurance coverage and of effective management of sea-going vessels. When access to insurance is considered, it is apparent that the pilotage clause assigned risk consistently with standard coverage, since the insurance commonly carried by sea-going vessels covers accidents under pilotage. Id.; see A. Parks, Law of Tug, Tow & Pilotage 1035 (2d ed. 1982). There is every reason, therefore, to avoid drawing fine distinctions between the relative negligence of captain and mooring master when the two are in joint control of a ship's movement.
 
 
 12
 In sum, we decline to draw such distinctions, and find that the pilotage clause effectively shifted responsibility for the mooring master's actions from HIRI to Aegean.
 
 
 13
 AFFIRMED.
 
 
 
 *
 Honorable John Minor Wisdom, Senior Judge of the United States Court of Appeals for the Fifth Circuit, sitting by designation