**PAN ALASKA TRUCKING, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, etc., et al.,
Defendants.**

**No. A83–505 Civil.**

United States District Court,
D. Alaska.

Aug. 28, 1985.

Pestinger & Pettyjohn, R. Sam Pestinger, Anchorage, Alaska, Robert James Donovan, San Francisco, Cal., John G. McLaughlin, Portland, Or., and Robert Donovan, San Francisco, Cal., for plaintiff.

Birch, Horton, Bittner, Pestinger & Anderson, Anchorage, Alaska, for all defendants except Sealand Services, Inc., Sealand Freight Services, Inc. and Peter W. Shaw.

John M. Conway, Atkinson, Conway & Gagnon, Anchorage, Alaska, and John C. Fricano, Daniel M. Wall, Paul J. Kaleta, Skadden, Arps & Slate, Washington, D.C.,

for SeaLand Services, Inc. and SeaLand Freight Services, Inc.

## MEMORANDUM AND ORDER

FITZGERALD, Chief Judge.

Plaintiff Pan Alaska Trucking, Inc. (Pan Alaska) instituted this suit in September 1983 against defendants International Brotherhood of Teamsters Local 959 and Alaska Teamster-Employer Service Corp. (Teamsters), SeaLand Services, Inc. and SeaLand Freight Services, ·Inc. (SeaLand), and forty individual truck owners. Pan Alaska includes, among other claims, allegations that the defendants violated antitrust laws, specifically §§ 1 and 2 of the Sherman Act, as amended, 15 U.S.C. §§ 1, 2 (1982), and § 4 of the Clayton Act, as amended, 15 U.S.C. § 15 (1982). On the antitrust claim, which is count one of the complaint, Pan Alaska seeks $5,000,000 in damages, said damages to be trebled.

Defendants Teamsters, SeaLand, and the forty individual truck owners, moved to dismiss count one of Pan Alaska's complaint. The defendants claim that their actions are exempt from the antitrust laws as labor activities under both the statutory exemptions in 15 U.S.C. § 17, 29 U.S.C. § 52, and 29 U.S.C. § 104, and the nonstatutory exemption discussed by the United States Supreme Court in *Connell Construction Co. v. Plumbers and Steamfitters Local Union No. 100,* 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). In acting on a motion to dismiss, "the plaintiff's allegations must be assumed to be true and the complaint must be construed in the light most favorable to the plaintiff." *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

According to the allegations in the complaint, the defendant truck owners, in April 1981, jointly undertook to demand higher truck lease fees from Pan Alaska. The truck owners met in secret with the Teamsters, SeaLand, and Alaska Rapid Transit, Inc. The Teamsters agreed to support both the truck owners' demands and boycotts necessary to force Pan Alaska to accede to those demands. It was further agreed and arranged for the truck owners to withdraw their trucks from Pan Alaska and lease them to Alaska Rapid Transit, and for the truck drivers to be employed by Alaska Rapid Transit. SeaLand, the sole permitted source of business for Pan Alaska, would divert the major portion of its long haul deliveries to Alaska Rapid Transit.

Pan Alaska refused to pay the higher truck lease payments but offered to let union drivers drive Pan Alaska's own trucks. The truck owners withdrew their trucks from Pan Alaska's service, refused to operate Pan Alaska's equipment, and boycotted Pan Alaska. Pan Alaska claims that because of this action, Pan Alaska lost business and was forced to pay the higher lease payments as demanded.

In October 1981, the truck owners again demanded higher truck lease payments from Pan Alaska. Pan Alaska again refused. In accordance with their agreement, the truck owners withdrew their trucks, the Teamsters refused to send other drivers to Pan Alaska, and SeaLand diverted cargo to Alaska Rapid Transit. As a result of the defendants' actions, Pan Alaska alleges it lost much of its business, lost its economic viability, and, in March 1982, ceased operations.

There are both statutory and nonstatutory exemptions from the antitrust laws for certain labor activities. The statutory labor exemptions are embodied in § 6 of the Clayton Act, 15 U.S.C. § 17, § 20 of the Clayton Act, 29 U.S.C. § 52, and § 4 of the Norris-LaGuardia Act, 29 U.S.C. § 104. In *Connell Construction Co. v. Plumbers and Steamfitters Local Union No. 100,* 421 U.S. 616, 621–22, 95 S.Ct. 1830, 1834–35, 44 L.Ed.2d 418 (1975), the United States Supreme Court stated that "[t]hese stat-

utes declare that labor unions are not combinations or conspiracies in restraint of trade, and exempt specific union activities, including secondary picketing and boycotts, from the operation of the antitrust laws." The exemptions do not extend, however, to concerted action or agreements between union and nonlabor parties. *Id.*

■ The nonstatutory labor exemption was discussed by the Supreme Court in *Local Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 85 S.Ct. 1607, 14 L.Ed.2d 626 (1965) and *Connell Construction*, 421 U.S. 616, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). Under the nonstatutory exemption, agreements between unions and nonlabor parties are not antitrust violations provided the union's goal is legal, and the actions do not have a substantial anticompetitive effect that would not follow naturally from the elimination of competition over wages and working conditions. *Connell Construction*, 421 U.S. at 625, 95 S.Ct. at 1836.

■ Both the statutory and nonstatutory exemptions are limited in scope. "It is well settled that exemptions from the antitrust laws are to be narrowly construed. This doctrine is not limited to implicit exemptions from the antitrust laws, but applies with equal force to express statutory exemptions." *Group Life and Health Insurance Co. v. Royal Drug Co.*, 440 U.S. 205, 231, 99 S.Ct. 1067, 1083, 59 L.Ed.2d 261 (1979) (citations omitted).

■ I find that viewing the allegations in the complaint in the light most favorable to Pan Alaska, it does not appear on this record that the claims fall within the labor exemptions from the antitrust laws. Pan Alaska complains of an allegedly illegal agreement between the Teamsters and the truck owners. The defendants contend that the truck owners constitute a labor group and as such fall within the statutory exemptions. I am not persuaded. Although some of the truck owners involved in the agreements apparently drove their own trucks, at least one of the truck owners named as a defendant is a corporation. It cannot be said at this stage of the litigation that the truck owners were acting solely in their capacity as drivers, a labor group.

The Supreme Court's holding in *Local 24, International Brotherhood of Teamsters v. Oliver*, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959), does not require a different result. The collective bargaining agreement provision at issue in *Oliver* regulated truck lease payments only when a lessor-driver drove his own truck in the business of the lessee-carrier. *Id.* at 286–87, 79 S.Ct. at 299–300. In upholding the validity of this provision, the Court recognized "the Article's narrowly restructed application to the times when the owner drives his leased vehicle for the carrier, and ... the adverse effects upon the negotiated wage scale which might result when the rental for the use of the leased vehicle was unregulated at these times." *Id.* at 293, 79 S.Ct. at 303. In the case at bar, Pan Alaska alleges illegal agreements extending beyond the limited provision at issue in *Oliver*.

This distinction was recognized by the Third Circuit in *United States Steel Corp. v. Fraternal Association of Steelhaulers*, 431 F.2d 1046 (3d Cir.1979). The employers in *Steelhaulers* sued to enjoin individual truck owners and a truck owners association from picketing or patrolling highways and interfering with the hauling of steel. The truck owners claimed their activities were exempt from the antitrust laws because they constituted a labor group. The court rejected this argument and distinguished *Oliver:*

> [T]he controversy in [*Oliver*] was recognized as a "labor dispute" because it essentially involved the preservation of a driver's wage....
>
> ... The basic factor present in [*Oliver*]—maintenance of the integrity of the driver's basic wage scale—seems conspicuously absent here, at least on the present state of the record. Rather, what appears to be involved is the owner's demand for a more profitable operation of his equipment.

*Id.* at 1050.

According to Pan Alaska's allegations in the case at bar, the truck owners were not

interested in increasing their wages as drivers, but were instead attempting to raise the lease payments for equipment—their trucks. Based on Pan Alaska's complaint, it cannot be said that the defendant truck owners constituted a labor group within the statutory exemptions from the antitrust laws.

The nonstatutory exemption is also inapplicable to the case at bar. As stated by the Supreme Court:

> The nonstatutory exemption has its source in the strong labor policy favoring the association of employees to eliminate competition over wages and working conditions. Union success in organizing workers and standardizing wages ultimately will affect price competition among employers, but the goals of federal labor law never could be achieved if this effect on business competition were held a violation of the antitrust laws. The Court therefore has acknowledged that labor policy requires tolerance for the lessening of business competition based on differences in wages and working conditions. Labor policy clearly does not require, however, that a union have freedom to impose direct restraints on competition among those who employ its members. Thus, while the statutory exemption allows unions to accomplish some restraints by acting unilaterally, the nonstatutory exemption offers no similar protection when a union and a nonlabor party agree to restrain competition in a business market.

*Connell Construction,* 421 U.S. 616, 622–23, 95 S.Ct. 1830, (citations omitted). For actions to be exempt from the antitrust laws under the nonstatutory exemption, there must be a legitimate union goal and no substantial anticompetitive effect. *Id.* at 625, 95 S.Ct. at 1836.

■ The allegedly illegal agreement at issue in this case involved efforts to increase truck lease fees. The defendants contend that a dispute over truck lease fees is essentially a dispute over wages, a "legal" subject of bargaining. I do not agree. Under the allegations contained in Pan Alaska's complaint, the defendants were not seeking higher wages, but rather higher payments for their equipment. Furthermore, the alleged illegal agreement and boycott of Pan Alaska had clear anticompetitive effects. According to Pan Alaska, the defendants' actions drove business away from Pan Alaska and eventually forced it to shut down. Such effects are not those that would follow naturally from the elimination of competition over wages and working conditions. As stated above, it cannot be said at this stage of the litigation that this case falls within the narrow holding of *Oliver.*

I thus conclude that the defendants' actions as alleged in Pan Alaska's complaint fall within neither the statutory exemptions from the antitrust laws nor the nonstatutory exemption. I find that at this stage in the litigation, it cannot be said that Pan Alaska will be able to prove no set of facts which would entitle it to relief. I therefore DENY the defendants' motions to dismiss count one of Pan Alaska's complaint.

The defendants additionally move to dismiss all claims against William Growden, Ernest E. Webb, Rennie (Bud) Spurgeon, and Glen Starn, claiming that these four defendants were neither owners of truck/tractors, principals of corporate owners, nor in partnership with truck owners, during the relevant time. Pan Alaska stated that it is willing to dismiss these four defendants. *See* Pan Alaska's Memorandum in Opposition and Response to Motion to Dismiss Defendants Local 959, Alaska Teamster-Employer Service Corporation and Certain Individual Defendants at 16 (filed June 21, 1984). I therefore GRANT the motion to dismiss these four defendants.

The defendant also moved, on May 4, 1984, to dismiss eleven defendant truck owners for insufficiency of service of process. Ten of those defendants have since been personally served or served by mail (*see* docket entries 38, 42, 43, 44, 45). The eleventh defendant, Douglas Beal, was served by publication pursuant to Fed.R. Civ.P. 4(c)(2)(C)(i) and Alaska Civ.R. 4(c) (*see* docket entries 62, 66). I therefore DENY the motion to dismiss these defendants for insufficiency of process.

IT IS ACCORDINGLY ORDERED THAT:

(1) The motion of defendants Local 959, Teamster-Employer Service Corp., and the individual truck owners to dismiss count one of Pan Alaska's complaint (docket entry 22) is DENIED.

(2) The motion of defendants SeaLand Services, Inc. and SeaLand Freight Services, Inc. to dismiss count one of Pan Alaska's complaint (docket entry 94) is DENIED.

(3) The motion of defendants William Growden, Ernest E. Webb, Rennie (Bud) Spurgeon, and Glen Starn to dismiss all claims against them (docket entry 22) is GRANTED. All claims against these four defendants are hereby DISMISSED.

(4) The motion of eleven defendant truck owners to dismiss for insufficiency of process (docket entry 22) is DENIED.