Captain Michael C. **SPENCE**, Plaintiff,

v.

**SOUTHEASTERN ALASKA PILOTS' ASSOCIATION, et al.,**
Defendants.

No. J90–004 Civil.

United States District Court,
D. Alaska.

Dec. 11, 1990.

Paul L. Dillon, Dillon and Findley, Juneau, Alaska, for plaintiff.

C.L. Cloudy, Trevor N. Stephens, Ziegler, Cloudy King & Peterson, Ketchikan, Alaska, W.G. Ruddy, Kathryn Kolkhorst, Ruddy, Bradley & Kolkhorst, Juneau, Alaska, for defendants.

## MEMORANDUM AND ORDER

VON DER HEYDT, District Judge.

### I. INTRODUCTION.

THIS CAUSE comes before the court on plaintiff's motion for partial summary judgment filed August 3, 1990 (Docket No. 33), on defendants' cross-motion for partial summary judgment filed August 28, 1990 (Docket No. 43) and on defendant Nerup's request to refuse application for summary judgment or in the alternative continue the time for response to allow time to conduct discovery filed August 28, 1990 (Docket No. 42). For the reasons set forth below, the parties' motions are denied.

### II. BACKGROUND.

Plaintiff, Captain Spence, is a marine pilot licensed by the State of Alaska and the United States Coast Guard. Spence Affidavit, May 16, 1990, ¶ 1. Plaintiff is also a member of the Southeastern Alaska Pilots' Association (SEAP). *Id.*, ¶ 2. Defendant, SEAP, is a voluntary, unincorporated association of persons licensed by the State to perform marine pilotage in the waters of southeast Alaska. Plaintiff's Exhibit A, (hereinafter SEAP Bylaws) filed May 16, 1990.

The purpose of SEAP stated in Article III of its Articles of Association is:

A. To consider and deal by all lawful means with common problems involved in promoting and advancing the profession of pilotage, to advance the cause of safety and general welfare of professional pilots within Southeastern Alaska, and to secure cooperative action in advancing purposes of the members of the Association; and,

B. To do anything necessary and proper for the accomplishment of any purposes set forth hereinabove, without profit to the Association.

Membership in SEAP is limited to twenty-one marine pilots who are licensed by the State. SEAP Bylaws, Article II. New

members are admitted to fill a vacancy or by two-thirds vote of the membership. *Id.* Members are classified into four categories based on experience and availability for dispatch. *Id.* The income and expenses of members are pooled and the net income is equitably distributed to the individual members in proportions determined by the pilot's classification. SEAP Bylaws, Article IX. Members are required to use only the Association as their means of access to pilotage employment in southeastern Alaska and are limited for a period of ten years from competing in southeastern Alaska following retirement or expulsion from SEAP. SEAP Bylaws, Article XII. Member pilots of SEAP are considered independent contractors. Collins Affidavit filed September 19, 1990 (Docket No. 51), Exhibit A, Articles of Association, Article V, as amended April 4, 1990. Non-member Alaska pilots are offered SEAP's dispatch and income expense pooling services for southeastern Alaska during the months of June through September. SEAP Bylaws, Article XIII.

SEAP acts as an agent of its members and non-members in dealing with the vessel agent to arrange pilotage but does not contract with the vessel served by its members. Defendants' Opposition to Motions for Injunctive Relief filed May 25, 1990 (Docket No. 15). The pilots dispatched by SEAP are under direct hire of the vessel. *Id.* At times, SEAP "negotiates" tariffs on behalf of its membership. *Id.* (Quotation in original.) SEAP is prohibited by law from exercising any control over pilotage activities. *Id.*

Plaintiff was sent October 25, 1989 a "Notice of Disciplinary Charge" by the president of SEAP, Captain Robert Smith. Plaintiff was charged with "defamation of fellow members, or other action or behavior bringing discredit upon the Association." Plaintiff's Motion for Preliminary Injunction filed May 16, 1990 (Docket No. 7), Exhibit D1. After a hearing and submission of vote to the other members, plaintiff was suspended from SEAP dispatch for thirty days to run from June 1

through June 30, 1990.[1] *Id.,* Exhibit C. Plaintiff filed May 16, 1990 (Docket No. 5) a motion for a temporary restraining order and a motion for preliminary injunction (Docket No. 7). The court granted plaintiff's temporary restraining order May 25, 1990 (Docket No. 16) pending its consideration of plaintiff's motion for preliminary injunction. The parties entered a stipulation filed June 5, 1990 (Docket No. 19) which stayed the planned suspension of plaintiff pending final judgment in this matter. The parties subsequently filed motions for partial summary judgment on defendants' third affirmative defense.

## III. DISCUSSION.

### A. *Summary Judgment*

Federal Rule Civil Procedure 56(c) provides for summary judgment when "... pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of identifying for the court the portions of the record it believes demonstrate the absence of any material fact. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n.,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The non-moving party must then set forth, by affidavit or otherwise, specific facts that may be resolved only by a finder of fact. *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). When there is a conflict with the evidence produced by each side, the court must assume the truth of the evidence set forth by the opposing party. Inferences must be drawn in favor of the opposing party. *T.W. Electrical Service,*

---

**1.** Plaintiff alleges, among other things, procedural and substantive irregularities in the hearing process. Those questions are not before the court at this time.

*Inc.*, 809 F.2d at 631. Summary judgment is not precluded by a simple disagreement as to a material issue of fact. *California Architectural Bldg. Products, Inc.*, 818 F.2d at 1466.

### B. *Plaintiff's Motion for Partial Summary Judgment*

Plaintiff seeks partial summary judgment in his favor on defendants' third affirmative defense of immunity from antitrust laws. Defendants filed May 29, 1990 (Docket No. 17) an answer to plaintiff's complaint raising an affirmative defense which states:

> As to all counts, these defendants cannot be held as a matter of law in violation of the various statutory proscriptions cited therein against restraint of trade, monopoly, and antitrust.

Defendants' Answer, p. 11, ¶ 3.

Plaintiff argues that the affirmative defense is phrased in terms of Fed.R.Civ.P. 12(b)(6). That rule governs motions to dismiss for failure to state a claim upon which relief can be granted. Plaintiff asserts that defendants' affirmative defense intends that "even if the factual allegations of Captain Spence's Complaint are true, 'as a matter of law' defendants cannot be held liable under the antitrust law." Plaintiff's Motion for Partial Summary Judgment, p. 2. Plaintiff claims that defendants' affirmative defense is incorrect and that it should be dismissed.

Defendants submit that plaintiff has mischaracterized defendants' third affirmative defense as a defense for dismissal under Fed.R.Civ.P. 12(b)(6) or that defendants' defense asserts that plaintiff has inadequately pled the elements of his cause of action. Defendants point out that their first, and not third, affirmative defense focuses on the issue of a failure to state a claim. Defendants' first affirmative defense states "Plaintiff's complaint fails to state a claim upon which relief can be granted."

The court agrees that plaintiff has mischaracterized defendants' third affirmative defense. Defendants have affirmatively pled in their first defense the basis of a request for dismissal under Fed.R.Civ.P. 12(b)(6). That defense is not before the court. Defendants' third affirmative defense claims exemption from the application of antitrust laws based on protection of the laws of pilotage and various labor law statutes. Defendants raised this protection in their cross-motion for partial summary judgment more fully discussed below. Plaintiff argues in his motion that he has adequately pled all the elements required to show a violation of the Sherman Act, 15 U.S.C. § 1 and § 2, and that to the extent that defendants' affirmative defense rests on the elements needed to prove a violation of these sections, plaintiff has made such a showing. To the extent that plaintiff's motion and arguments mischaracterized defendants' third affirmative defense, plaintiff's motion for partial summary judgment is denied without prejudice.

### C. *Defendants' Motion for Partial Summary Judgment*

Defendants moved for summary judgment in their favor on plaintiff's counts one through four based on their third affirmative defense. Defendants assert that their third affirmative defense is based on the nature of pilotage and the labor exemption contained in the applicable federal and state law. Defendants' Motion for Partial Summary Judgment, p. 2. Defendants argue that because the state has plenary authority to regulate pilotage, federal antitrust laws are inapplicable to the state's regulatory scheme. Defendants further argue SEAP is exempt from the antitrust laws due to its status as a labor organization. Plaintiff argues that his complaint contests a private association, not state authority, to regulate pilotage. Plaintiff further argues that SEAP is not a labor organization entitled to exemption from the antitrust laws.

Pilotage as a profession dates back to Roman law. *Ex parte McNiel*, 80 U.S. (13 Wall.) 236, 20 L.Ed. 624 (1871). Pilots have been regarded as "indispensable cogs in the transportation system of every maritime economy." *Kotch v. Board of River Port Pilot Comm'r*, 330 U.S. 552, 558, 67 S.Ct. 910, 913, 91 L.Ed. 1093 (1947). States

early on were vested with the authority to regulate pilotage with the passage of an Act in 1789. That Act is today found in 46 U.S.C. § 8501 which provides that "pilots ... shall be regulated only in conformity with the laws of the States." States have enacted compulsory pilot laws and the Supreme Court has held that the federal antitrust laws are inapplicable to a state's compulsory pilotage scheme. *Olsen v. Smith,* 195 U.S. 332, 25 S.Ct. 52, 49 L.Ed. 224 (1904).

Mandatory pilotage requirements for those pilots wishing to work in Alaska waters are found in Alaska Statute (AS) 08.-62.160. Licensing requirements are found in AS 08.62.040 and AS 08.62.150. Pilot tariffs are set out in AS 08.62.040(a)(1).

▪ Defendants assert that because the states have authority to regulate pilots and because this authority is exempt from application of the federal antitrust laws, plaintiff's federal antitrust claims should fail. Plaintiff contends that he does not dispute the authority of the state to regulate or demand compulsory pilotage. Plaintiff argues that his claim is not against the state but against SEAP, as an association, which is not exempt from the antitrust laws. The court agrees with plaintiff. Plaintiff has not brought suit against the state. Defendants have not shown how the immunity of the state might extend to a private association of pilots organized for the purpose of dispatch and pooling resources. Therefore, to the extent that defendants' motion for summary judgment on their third affirmative defense rests on the state's exemption from the federal antitrust laws pursuant to its authority to regulate pilotage, defendants' motion is denied.

▪ Defendants further assert that SEAP is exempt from the application of the antitrust laws based on its qualification as a labor organization. Defendants also argue that though SEAP members are independent contractors, the definition of "employee" is applicable, and that the issue in question in this suit can be characterized as a "labor dispute."

▪ Antitrust laws are not applicable to labor organizations. "Nothing in the antitrust laws shall be construed to forbid the existence and operation of labor ... organizations, instituted for the purposes of mutual help...." 15 U.S.C. § 17. *Connell Constr. Co. v. Plumbers & Steamfitters Local Union No. 100, etc.,* 421 U.S. 616, 621–22, 95 S.Ct. 1830, 1834–35, 44 L.Ed.2d 418 (1975) (basic source of organized labor exemption from federal antitrust laws are found in the Clayton Act, 15 U.S.C. § 17 and 29 U.S.C. § 52; the Norris–LaGuardia Act, 29 U.S.C. §§ 104, 105, 113); *Pan Alaska Trucking v. International Brotherhood of Teamsters,* 621 F.Supp. 800, 802 (D.Alaska 1985) (exemptions from the antitrust laws are to be narrowly construed).

The term "labor organization" is defined in 29 U.S.C. § 152(5) as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." The Supreme Court has stated that the words "dealing with" are not to be read as synonymous with the term "bargaining with." *NLRB v. Cabot Carbon Co.,* 360 U.S. 203, 211, 79 S.Ct. 1015, 1019, 3 L.Ed.2d 1175 (1959). The Court in that case held that employee committees at issue were labor organizations.

Courts have described pilot associations, such as SEAP, as organizations not easily legally defined. One court has found that such organizations are not partnerships or joint ventures, and further that the concept of respondeat superior does not apply. *General v. Pilots Ass'n. for Bay and River Delaware,* 254 F.Supp. 447 (D.Del.1966). Another court has likened a pilots' association to a union hiring hall. *O'Hare v. United States,* 150 A.M.C. 182 (W.D.Wash. 1949). These cases were both concerned with liability of the pilots' association for the negligent acts of an individual pilot. Another case, *Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.,* 467 F.Supp. 841 (N.D.Cal.1979); *aff'd* 658

F.2d 1256 (9th Cir.1981), found the labor exemption to apply (members of the association were employees of the ship assist company and conducted no services independent of their employment with the company).

Defendants claim that SEAP qualifies as a "labor organization." Relying on the statutory language, defendants assert that SEAP "deals with" employers on behalf of its members,[2] that it bills the ships and collects, pools, and distributes payments on the members' behalf, that it deals with ship agents with regards to proposed tariffs and in regard to conditions of member's employment conditions.

Neither the language of the statute that defendants focus upon nor the case law that is relied upon supports defendants' contention that SEAP qualifies as a "labor organization." Defendants argue that courts have interpreted "deals with" as not to be limited to "bargain with." This court does not disagree. However, the statute also spells out that the organization must deal with *employers* (emphasis added). As discussed below, SEAP members are not employees (SEAP pilots are independent contractors) and defendants do not "deal with" employers on the pilots' behalf. Defendants claim SEAP "deals with" ship agents on behalf of the pilots. Ship agents are not, however, considered employers of the pilots. In addition, many of the activities defendants claim that it does on behalf of SEAP members are administrative activities of the association and not those that "deal with" employers. *General v. Pilots' Ass'n.*, 254 F.Supp. at 454. Defendants claim that plaintiff does not dispute that SEAP represents plaintiff's interest in regard to conditions of employment. To the contrary, plaintiff does, in fact, aver that the pilots are responsible for *all* dealings with the vessels. (Emphasis added.)

The cases relied upon by defendants involved situations of employee committees or unions specifically organized to deal with employer-employee relationships. The

courts in *General v. Pilots' Ass'n.* and *O'Hare* were concerned with liability of pilot associations for the negligence of a member pilot. The court in *O'Hare* and cited in *General v. Pilots' Ass'n.* likened a pilots' association to a union hiring hall. The court did not address the issue of whether a pilots' association was a labor organization with the meaning of the statute. A labor organization was found to exist in *Murphy Tugboat.* In that case, however, the pilots were employees of the ship assist company and the labor exemption applied because the issue involved an agreement between the employee pilots and their employer. Defendants submitted a copy of an unreported decision, *Texas Federal Pilots, Inc. v. Sabine Pilots' Ass'n.*, No. B–79–63–CA (E.D.Texas, December 17, 1980), in which the court found that "The alleged activities of the defendants were immune from the antitrust laws by reason of the labor exemption." There was no factual or legal analysis which accompanied the decision and it therefore is not helpful to this court in its analysis of the issues before it. Therefore, the court finds that SEAP does not qualify as a labor organization either by the language of the statute nor under the case law on which defendants rely.

■ The definition of employee is found in 29 U.S.C. § 152(3). It states that an employee "shall not include any ... individual having the status of an independent contractor...." A party seeking refuge in the statutory exemption must be a bona fide labor organization and not independent contractors. *H.A. Artists & Associates, Inc. v. Actors' Equity Ass'n.*, 451 U.S. 704, 717 n. 20, 101 S.Ct. 2102, 2110 n. 20, 68 L.Ed.2d 558 (1981) (actors' agents were considered a labor group). The fact that distributor-members were independent contractors rather than employees does not, standing alone, remove the protective shield of labor's antitrust exemption. *United States v. Olympia Provision & Baking Co.*, 282 F.Supp. 819, 827 (S.D.N.Y.

---

**2.** Both parties agree that SEAP members are independent contractors, and not employees of     the association.

1968). However, the acts of labor organizations of those who are independent contractors must be closely scrutinized before the exemption is allowed. *Id.* In a dispute between horse owners and the horseshoers' union, the court found that the horseshoers were independent contractors and that no employer-employee relationship existed. *Taylor v. International Union of Journeymen Horseshoers*, 353 F.2d 593 (4th Cir.1965).

Courts have held that pilots are not employees of vessels. *California by Department of Public Works v. The Italian Motorship Ilice*, 534 F.2d 836, 841 (9th Cir. 1976). A ship may be liable *in rem* for the negligence of the pilot but the ship owner is not liable *in personam* for the pilot's negligence. *Id.* Courts have declined to use the doctrine of respondeat superior to find ship owners liable for the negligence of pilots. *Id.*

The Supreme Court has stated that refuge in the statutory exemption can apply if it is shown that there exists a bona fide labor organization. *H.A. Artists & Associates, Inc.* Defendants in the present case have not shown that SEAP is a bona fide labor organization. In addition, it is undisputed that SEAP members are independent contractors. While one district court has found that fact, standing alone, does not remove the protective shield of statutory exemption, the language of the statute indicates that independent contractors are not to be considered "employees."

■ Defendants assert that even if SEAP members are independent contractors, and not employees, the defendants still meet the employee status. Defendants argue that SEAP pilots are "employees" of the ship, although not employees of the ship owners. Defendants do not forthrightly submit that the ship is the employer. Nor do defendants claim, nor can they, that it "deals with" a ship on behalf of SEAP member pilots. Defendants submit that SEAP deals with ship agents on behalf of pilots. However, the ship agent is not an "employer" of the pilots. This court declines to classify SEAP pilots as "employees" of a ship for the purpose of meeting the employee status required under 29 U.S.C. § 152(3). Further, the court notes that even if defendants could qualify as a "labor organization," an employer-employee matrix does not exist under the facts of this case. *Columbia River Packers Ass'n. v. Hinton*, 315 U.S. 143, 62 S.Ct. 520, 86 L.Ed. 750 (1942).

■ A labor dispute includes any controversy concerning terms or conditions of employment. 29 U.S.C. § 113(c). The term "labor dispute" is to be broadly construed. *International Ass'n. of Machinists & Aerospace Workers, Dist. Lodge No. 100 v. Eastern Air Lines, Inc.*, 826 F.2d 1141 (1st Cir.1987). A labor dispute, no matter how broad may be the classification of the parties and circumstances, does not expand to include controversies upon which the employer-employee relationship has no bearing. *Columbia River Packers Ass'n.*, 315 U.S. at 146–47, 62 S.Ct. at 522. Because the court finds that SEAP is not a labor organization and that SEAP members cannot fit within the "employee" classification, the court need not reach the question of whether a labor dispute is present in this case.

Therefore, the court finds that to the extent that defendants' third affirmative defense asserts protection from federal antitrust laws based on the state's plenary authority to regulate pilotage and on labor law's statutory exemption from the application of federal antitrust law, that defense is stricken and defendants' motion for partial summary judgment is denied.

D. *Defendant Nerup's Request to Refuse Application*

■ Nerup joins in defendants' opposition to plaintiff's motion for partial summary judgment. Nerup further requests that the court refuse application for summary judgment, or to continue the motion until further discovery can be conducted. Plaintiff opposed Nerup's request, arguing, among other things, that defendants have cross-moved for partial summary judgment on the third affirmative defense, thus admitting that a ruling is proper. Plaintiff's

arguments are well-taken. The court denied Nerup's request.

## IV. ORDER.

Accordingly, IT IS ORDERED:

(1) THAT plaintiff's motion for partial summary judgment filed August 3, 1990 (Docket No. 33) is denied without prejudice;

(2) THAT defendants' motion for partial summary filed August 28, 1990 (Docket No. 43) is denied;

(3) THAT defendants' third affirmative defense be stricken; and

(4) THAT defendant Nerup's request to refuse application for summary judgment filed August 28, 1990 (Docket No. 42) is denied.