777 F.2d 1344
 1986 A.M.C. 1016
 WEYERHAEUSER COMPANY, a corporation, Plaintiff-Appellant,
v.
Vessels ATROPOS ISLAND and CYNTHIA, et al.,
Defendants-Appellees. (Two Cases).
WEYERHAEUSER COMPANY, a corporation, Plaintiff-Appellee,
v.
Vessel ATROPOS ISLAND, etc., et al., Defendants,
and
Vessel CYNTHIA, its engine, tackle, gear and furnishings,
etc., in rem; Evergreen Shipping Co., Ltd.; and
Cynthia Maritima Corporation., foreign
corporations, Defendants-Appellants.
CYNTHIA MARITIMA CORPORATION, and Evergreen Shipping Co.,
Ltd., Plaintiffs- Appellants,
v.
The Vessel M/V ATROPOS ISLAND and A.S. Line K.K., a foreign
corporation, Defendants-Appellees.
 Nos. 84-3707, 84-3914 and 84-4026.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 11, 1985.
Decided Dec. 3, 1985.
As Amended on Denial of Rehearing and Rehearing En Banc Feb. 6, 1986.
 
 Floyd A. Fredrickson, John Dudrey, Williams, Fredrickson, Stark, Hiefield, Norville & Weisensee, P.C., Portland, Or., for Weyerhauser.
 M. Christie Helmer, Miller, Nash, Yerke, Wiener & Hagar, Portland, Or., for Vessel M/V Atropos & A.S. Line K.K.
 Erskine B. Wood, John M. Cowden, Wood, Tatum, Mosser, Brooke & Holden, Portland, Or., for defendants-appellees.
 Appeal from the United States District Court for the District of Oregon, Portland.
 Before BROWNING and ALARCON, Circuit Judges, and STEPHENS,* District Judge.
 ALARCON, Circuit Judge:
 
 
 1
 This admiralty action arises out of a severe storm on the Columbia river. The storm caused two ships, the Cynthia and the Atropos Island, to move from the place they were anchored and to damage the docks of Weyerhaeuser Company. The district court exonerated Atropos Island of any liability and held Cynthia liable for some, but not all, of the damages to Weyerhaeuser's docks. Both Weyerhaeuser and Cynthia appeal. We affirm the judgment holding the Cynthia liable for damages and that the Atropos Island was not liable. We remand for a determination of the amount of monetary damages attributable to the impairment caused by the Cynthia to the non-integral parts of the docks.
 
 
 2
 * FACTUAL BACKGROUND
 
 
 3
 On November 13, 1981, the M/V Cynthia was at anchor in the Columbia river, upstream from several docks owned by Weyerhaeuser Company. The lumber barge Miami was secured to Weyerhaeuser's barge dock by four or five mooring lines. Shortly after midnight, the M/V Atropos Island anchored just upstream from Cynthia.
 
 
 4
 During the early hours of November 14, a strong wind came up. The wind caused both Cynthia and Atropos Island to drag anchor, resulting in two sets of allisions between the two ships, the docks, and the Miami.[1]
 
 
 5
 The first set of allisions began when Cynthia struck Weyerhaeuser's cargo dock at about 2:25 a.m. At about 2:40 a.m., Cynthia struck the Miami, resulting in damage to the barge dock and causing all but one of the Miami's mooring lines to break. Two or three of the Miami's mooring lines were subsequently reattached to the docks. One mooring line was run from Cynthia to the docks. Cynthia was also secured by its starboard anchor and by a corner of the Miami which was impaled in Cynthia's hull.
 
 
 6
 The second set of allisions began at about 6:20 a.m. when Atropos Island allided with Cynthia. This allision caused both Cynthia and Miami to break free from their moorings, resulting in further damage to the barge dock. Cynthia also struck and damaged a small wooden mooring dolphin. Atropos Island moved downstream and anchored.
 
 
 7
 After a bench trial, the district court exonerated Atropos Island of any liability to Weyerhaeuser. The court found that the exceptionally high winds constituted an "Act of God," and that Atropos Island's crew used reasonable care under the circumstances to prevent the allisions.
 
 
 8
 The district court also exonerated Cynthia of liability for damages from the second allisions on the ground that Cynthia would have remained moored next to the Miami if Atropos Island had not struck Cynthia. The court held Cynthia liable for damages to Weyerhaeuser's docks from the first allisions, however. The court found that Cynthia's crew failed to take proper precautions between midnight and 2 a.m. in face of the approaching storm, such as awakening the captain, turning on the radar, or readying the engines. The court also noted that there was testimony that Cynthia began dragging anchor before 2 a.m., but Cynthia's captain did not notice this fact until 2:20 a.m.
 
 
 9
 Weyerhaeuser made a post-trial motion for an additional finding of fact concerning its claim that, sometime during the night, Atropos Island struck and damaged its log boom dolphins. The district court denied this motion. The court also dismissed a separate action by Cynthia against Atropos Island, based on its finding that Atropos Island used reasonable care.
 
 
 10
 Weyerhaeuser appeals both the denial of its post-trial motion and the district court judgment exonerating Atropos Island and Cynthia of liability for damages from the second allisions. Weyerhaeuser contends that the district court used the wrong standard of care; that the district court clearly erred in finding that Atropos Island was not negligent; and that the district court erroneously found that Cynthia's negligence did not proximately cause the damages from the second allisions. On cross-appeal, Cynthia contends that the district court clearly erred by finding that it failed to use reasonable care to prevent the first allisions, and that the district court should have reduced the amount of damages from the first allisions by the extent that damaged parts of the docks had depreciated in value. For the reasons stated below, we affirm regarding liability but remand for further proceedings concerning the issue of damages.
 
 II
 STANDARD OF CARE
 
 11
 When a vessel breaks free from its moorings and strikes a stationary object, there is a presumption that the vessel is at fault. See The Louisiana, 3 Wall 164, 173, 70 U.S. 164, 173, 18 L.Ed. 85 (1865); The President Madison, 91 F.2d 835, 837 (9th Cir.1937). Because of this presumption, the district court required Cynthia and Atropos Island to prove by a preponderence of the evidence that they used reasonable care under the circumstances to avoid hitting Weyerhaeuser's docks. Weyerhaeuser argues that the district court should have applied a higher standard than reasonable care under the circumstances.
 
 
 12
 The proper standard of care is a legal conclusion subject to de novo review. Berg v. Chevron, 759 F.2d 1425, 1429 (9th Cir.1985). We hold that the district court properly applied a reasonable care standard.
 
 
 13
 Weyerhaeuser relies primarily on the Supreme Court's statement in The Louisiana, 3 Wall. at 173, 70 U.S. at 173, that a moving vessel which strikes a stationary object is liable unless it proves that the allision "was the result of inevitable accident, or a vis major, which human skill and precaution, and a proper display of nautical skill could not have prevented." We find this test fully consistent with the reasonable care standard applied by the district court. The phrase "human skill and precaution, and a proper display of nautical skill" is essentially synonomous with "reasonable care under the circumstances." Thus, Cynthia and Atropos Island could not have used reasonable care under the circumstances unless they also used proper nautical skill and precautions to avoid the allisions.
 
 
 14
 Case law supports our interpretation of The Louisiana. Four years after The Louisiana, in a case involving a collision between two moving vessels, the Supreme Court specifically stated that the inevitable accident defense does not require use of the "highest degree of caution.... It is enough that it is reasonable under the circumstances...." The Grace Girdler, 7 Wall 196, 203, 74 U.S. 196, 203, 19 L.Ed. 113 (1869). In later cases, the Supreme Court used phrases analogous to "reasonable care under the circumstances," such as "due care," "proper care," and "proper precautions." See The Virginia Ehrman and The Agnese, 7 Otto 309, 313, 315, 97 U.S. 309, 313, 315, 24 L.Ed. 890 (1877); The Clarita and The Clara, 23 Wall. 1, 11-13, 90 U.S. 1, 11-13 (1874); The Mabey and Cooper, 14 Wall. 204, 215, 81 U.S. 204, 215, 20 L.Ed. 881 (1871). The decisions of our court, although not precisely defining the standard of care, are also consistent with a reasonable care standard.[2] Further, several other courts have expressly adopted a reasonable care standard.[3]
 
 
 15
 Alternatively, Weyerhaeuser argues that even if the proper standard is reasonable care under the circumstances, this standard is more stringent than the "ordinary" reasonable care standard. This argument is meritless. Although the amount of care that is reasonable depends on the circumstances, the standard itself does not change. The Fifth and Second Circuits have stated that the moving vessel has a heavy burden of showing that it used reasonable care. Petition of United States, 425 F.2d at 995; The Charles H. Sells, 89 F.2d at 633. This language, however, merely refers to the presumption that the moving vessel is at fault, and does not impose a higher standard of reasonable care than the ordinary standard.
 
 III
 BURDEN OF PERSUASION
 
 16
 The district court required Cynthia and Atropos Island to prove by a preponderance of the evidence that they used reasonable care. The district court relied on the admiralty rule that a moving vessel that hits a stationary object is presumptively at fault, and thus bears the burden of proof and not merely of production. The district court correctly applied the law of this circuit. Carr v. Hermosa Amusement Corp., 137 F.2d 983, 985 (9th Cir.1943), cert. denied, 321 U.S. 764, 64 S.Ct. 520, 88 L.Ed. 1060 (1944); People of California v. Italian Motorship Ilice, 534 F.2d 836, 840 (9th Cir.1976); Ishizaki Kisen Co. v. United States, 510 F.2d 875, 880 (9th Cir.1975); accord Florida Fast Coast Railway Co. v. Revilo Corp., 637 F.2d 1060, 1065-66 (5th Cir.1981).
 
 IV
 ATROPOS ISLAND'S LIABILITY
 
 17
 The district court found that Atropos Island was not liable for damages to Weyerhaeuser's docks because it proved that it used reasonable care under the circumstances. Weyerhaeuser challenges this finding, arguing that Atropos was negligent in failing to drop a second anchor to prevent the allision. We reject this argument.
 
 
 18
 We review the district court's determination that Atropos Island used reasonable care under the clearly erroneous standard. See Fed.R.Civ.P. 52(a); Berg v. Chevron U.S.A., Inc., 759 F.2d 1425, 1430 (9th Cir.1985). We must accept the district court's factual findings unless we have a definite and firm conviction that they are mistaken. Harbeson v. Parke Davis, Inc., 746 F.2d 517, 521 (9th Cir.1984). We are not free to reverse simply because we could have given more weight to certain evidence; the weight and credibility of the evidence is "the special province of the trier of fact." Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 856, 102 S.Ct. 2182, 2189, 72 L.Ed.2d 606 (1982); see D & S Redi-Mix v. Sierra Redi-Mix & Contracting Co., 692 F.2d 1245, 1248 (9th Cir.1982) (weight and credibility of expert testimony are not proper subjects for appellate review).
 
 
 19
 The district court found that Atropos Island justifiably decided to maneuver with its engine and only one anchor because it was concerned that the second anchor might become entangled with the first anchor, and thus cause the ship to go out of control. This finding was not clearly erroneous. Although one expert testified that Atropos Island should have dropped its second anchor, two experts testified that the risks created by dropping the second anchor far outweighed the potential benefits. These experts testified that the second anchor would have reduced the ship's maneuverability, would not have necessarily stabilized the ship, and could have caused the ship to go out of control if the second anchor became entangled with the first anchor. In view of this testimony, we cannot say that the district court clearly erred by finding that Atropos Island used reasonable care.[4]
 
 V
 CYNTHIA'S LIABILITY
 A. The First Allisions
 
 20
 The district court held Cynthia liable for damages resulting from the first allisions with Weyerhaeuser's docks because Cynthia negligently failed to take proper precautions in face of the approaching storm. Cynthia argues that it did use reasonable care under the circumstances. This argument is without merit on appeal.
 
 
 21
 As stated above, we may not reverse the district court's factual findings on negligence unless they are clearly erroneous. Fed.R.Civ.P. 52(a); Berg, 759 F.2d at 1430. Further, we must give deference to the district court's determinations of witness credibility and the weight of the evidence. Inwood Laboratories, 456 U.S. at 856, 102 S.Ct. at 2189; D & S Redi-Mix, 692 F.2d at 1248.
 
 
 22
 The district court did not clearly err by finding that Cynthia's crew failed to exercise reasonable care in face of the approaching storm. The evidence showed that the wind sharply increased from 1 to 2 a.m. until it was a full gale, or 30-40 knots per hour. Cynthia's crew, however, failed to take basic precautions such as turning on the radar, putting the engines on standby, checking the anchor, or awakening the captain. Captain Ng did wake up at 2 a.m. and soon turned on the radar and put the engines on standby. The testimony of Pilot Paul Gray, however, shows that Cynthia had been dragging anchor for thirty minutes before Captain Ng noticed this fact at 2:20 a.m. As a result, when Captain Ng finally began to maneuver with his engine, he was unable to avoid allision with Weyerhaeuser's docks.
 
 
 23
 Cynthia argues that Gray's testimony that he noticed Cynthia begin dragging anchor before 2 a.m., is not credible. Gray's testimony, however, is not so implausible or contradictory as to overcome the deference we must give to the district court's determinations of witness credibility. Although it was a dark night and Gray was a mile and a half away, his testimony that he noticed Cynthia dragging anchor by visual observation and radar is not inherently incredible. Further, contrary to Cynthia's contention, Gray's testimony that Cynthia remained in the same "approximate place" or "general area" while dragging anchor for thirty minutes is not contradictory. The phrases "approximate place" and "general area," which were part of a leading question posed by Cynthia's counsel, are broad enough to include Cynthia's positions both before and after dragging anchor. Finally, Gray's testimony that Cynthia began dragging anchor before 2 a.m. was corroborated by the deposition testimony of Captain Ng of Atropos Island that he noticed at 2:05 a.m. that Cynthia had already dragged anchor.
 
 
 24
 Cynthia next contends that it was illogical for the district court to hold Cynthia liable for the first allisions while exonerating Atropos Island of liability for the second allisions because both vessels responded in a similar fashion to the same unexpectedly severe storm. This contention is meritless. The record shows that Captain Ng of Atropos Island began to take precautions such as monitoring his radar and readying his engines as early as 1:30 a.m. In contrast, Cynthia failed to take any significant precautions until after 2:00 a.m.
 
 
 25
 Finally, Cynthia argues that even if it negligently failed to take proper precautions, its negligence did not proximately cause the first allisions because the wind was so strong that the allisions were inevitable. We disagree. By holding Cynthia liable for damages from the first allisions, the district court implicitly found that Cynthia's negligence proximately caused the allisions. We cannot reverse this finding of proximate causation unless it is clearly erroneous. See Berg, 759 F.2d at 1430. Because Cynthia dragged anchor for thirty minutes before attempting evasive maneuvers, the district court did not clearly err by holding Cynthia liable for damages resulting from the first allisions.[5]
 
 B. The Second Allisions
 
 26
 The district court held Cynthia not liable for damages to Weyerhaeuser's docks arising from Atropos Island's allision with Cynthia because Cynthia would have remained moored to the dock "but for" the allision of Atropos Island. Weyerhaeuser contends that the district court should have held Cynthia liable because the damages were causally connected with Cynthia's previous negligence, which resulted in Cynthia's mooring herself to Weyerhaeuser's docks. We reject this contention.
 
 
 27
 Although the district court used the language of actual causation, its opinion implies that it exonerated Cynthia because its negligence in failing to prepare for the storm did not proximately cause the damages from second allision. The concept of proximate cause is a means of cutting off liability for consequences that, although causally related to the defendant's negligent conduct, are not so closely connected with this conduct as to justify the imposition of liability. See W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts at 263-64 (5th ed. 1984). Proximate cause thus involves questions of legal policy as well as of fact. See id. at 273. We have repeatedly held, however, that the district court's determinations on proximate cause are findings of fact, and may be reversed only if they are clearly erroneous. See, e.g., Berg, 759 F.2d at 1430; Crescent Wharf & Warehouse v. Compania Naviera De Baja California, 366 F.2d 714, 717-18 (9th Cir.1966); accord Consolidated Grain and Barge Co., 716 F.2d 1077, 1082 (5th Cir.1983) (per curiam).
 
 
 28
 The district court did not clearly err by finding that Cynthia's negligence did not proximately cause the damages from the second allisions. As Weyerhaeuser concedes, these damages occurred only because of Atropos Island's allision with Cynthia. Cynthia's negligence did have some connection with the damages in that it led to Cynthia's position next to the docks. Cynthia's negligence, however, occurred more than four hours before the second allisions. Moreover, there was no evidence that Cynthia's position next to the docks was any more dangerous than if it had intentionally and non-negligently moored itself to the docks. Cynthia was securely moored at three points: its anchor, a line attached to the docks, and a corner of the Miami impaled on Cynthia's hull. Although Cynthia's manner of mooring was unusual, witnesses for both Weyerhaeuser and Cynthia testified that the ship appeared safe, and did not move until struck by Atropos Island four hours later.[6] There was no evidence that Cynthia's crew was negligent during the four hours Cynthia was next to the docks. Indeed, Weyerhaeuser's own expert witness testified that Cynthia's crew would have been negligent if they had attempted to move the ship away from the docks.
 
 
 29
 Nevertheless, Weyerhaeuser argues that Cynthia should be liable for damages from the second allisions because Cynthia's negligence created a foreseeable risk of harm to the docks, and the allision of Atropos Island resulted from the same force--the severe wind--that rendered Cynthia's conduct negligent. See Petition of Kinsman Transit Co., 338 F.2d 708, 723-26 (2d Cir.1964), cert. denied, 380 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965) (holding defendant liable for unforeseeably severe damages when some harm was foreseeable, and the damages resulted from the same risks that rendered the defendant's conduct negligent). Weyerhaeuser also relies on the principle that a negligent defendant may be liable for damages partially due to intervening conduct of a third party if that conduct was foreseeable. See, e.g., Nunley v. M/V Dauntless Colocotronis, 727 F.2d 455, 464 (5th Cir.) (en banc), cert. denied, --- U.S. ----, 105 S.Ct. 120, 83 L.Ed.2d 63 (1984).
 
 
 30
 The court in Kinsman, however, specifically noted that a defendant should not be liable for damages that bear only a tenuous causal relation to the defendant's negligence. 338 F.2d at 725. Similarly, intervening cause analysis is in the end merely a means of determining whether the defendant's negligence has a reasonably close connection with the damages. W. Prosser & W. Keeton, Prosser and Keeton on the Law of Torts at 302 (5th ed. 1984).[7] Because there was no evidence that Cynthia's position next to the docks was particularly hazardous and because Cynthia's negligence occurred four hours before the second allisions, the district court did not clearly err by finding that the connection between Cynthia's negligence and the second allisions was too tenuous to constitute proximate causation.[8]
 
 VI
 LOG BOOM DOLPHINS
 
 31
 Weyerhaeuser contends that the district court erred by denying its post-trial motion for a factual finding concerning its claim that, sometime during the night, Atropos Island negligently damaged its log boom dolphins. We disagree.
 
 
 32
 Federal Rule of Civil Procedure 52(a) requires findings of fact in judge tried actions. The purpose of this rule is so appellate courts "may have a clear understanding of the basis of the decision." Barber v. United States, 711 F.2d 128, 130 (9th Cir.1983); Swanson v. Levy, 509 F.2d 859, 861 (9th Cir.1975). However, as Weyerhaeuser concedes, "failure to make the necessary findings does not require remand if a complete understanding of the issues may be had without the aid of separate findings." Swanson, 509 F.2d at 861.
 
 
 33
 The district court did not make an express finding exonerating Atropos Island with respect to the log booms. However, this finding was unnecessary because the District Court generally exonerated Atropos Island of any liability for damages to Weyerhaeuser on the ground that Atropos Island used reasonable care throughout the entire night. As discussed above, supra part IV, the district court did not clearly err by finding that Atropos Island used reasonable care.
 
 VII
 DAMAGES FOR NON-INTEGRAL PARTS
 
 34
 The district court held the Cynthia was liable for the full cost of repairing the damages resulting from the first allisions. The Cynthia contends that the court should have reduced the amount of damages to the extent that the non-integral parts of the docks had depreciated in value through normal wear and tear. We agree.
 
 
 35
 We have recognized that depreciation should be allowed for damage to a non-integral part of a structure "where the damaged part was scheduled for early replacement, long before the expiration of the useful life of the whole." Oregon v. Tug Go-Getter, 468 F.2d 1270, 1274 (9th Cir.1972), quoting United States v. Ebinger, 386 F.2d 557, 561 (2d Cir.1967). There is no deduction for depreciation, however, when "the repair or replacement adds nothing of substance to the overall value of the structure of which it is an integral part." Id. at 1274. The district court erred in finding that all of the repaired parts were integral parts of the docks. The evidence is uncontradicted that certain parts of the dock would have required replacement long before the termination of the indefinite life span of the docks. Parts of the ball rail are replaced on the average of every three to five years. The cargo dock is resurfaced every three to five years. Sections of the trash fence are replaced once a year. The fender pilings are repaired after one or two years.
 
 
 36
 Because the undisputed evidence shows that some of the repaired parts appear not to be integral to the damaged docks, we must remand this matter to the district court to determine which of the repaired parts were not integral to the docks and the extent of the depreciation of such portions.
 
 
 37
 The order denying Weyerhaeuser's post-trial motion for an additional finding and the judgment entered in favor of the Atropos Island is AFFIRMED.
 
 
 38
 We AFFIRM the judgment in favor of Weyerhaeuser and against the Cynthia insofar as it holds the Cynthia liable for damages to Weyerhaeuser's docks. We REMAND for further proceedings concerning the depreciated value of the non-integral parts of the docks.
 
 
 
 *
 Honorable Albert Lee Stephens, Jr., Senior United States District Judge for the Central District of California, sitting by designation
 
 
 [1]
 An allision is a collision between a moving vessel and a stationary object
 
 
 [2]
 See Carr v. Hermosa Amusement Corp., 137 F.2d 983, 985 (9th Cir.1943) (moving vessel failed to overcome presumption of fault because the evidence showed that it struck a properly anchored fishing barge while travelling at an excessive rate of speed), cert. denied, 321 U.S. 764, 64 S.Ct. 520, 88 L.Ed. 1060 (1944); The President Madison, 91 F.2d 835, 841-42 (9th Cir.1937) (vessel was negligent in failing to notice an approaching storm and to extend additional mooring lines)
 
 
 [3]
 See, e.g., Bunge Corp. v. M/V Furness Bridge, 558 F.2d 790, 795 (5th Cir.1977) (moving vessel "must exhaust every reasonable possibility which the circumstances admit and show that in each they did all that reasonable care required"), cert denied, 435 U.S. 924, 98 S.Ct. 1488, 55 L.Ed.2d 518 (1978); Petition of United States, 425 F.2d 991, 995 (5th Cir.1970) (moving vessel must take "reasonable precautions under the circumstances as known or reasonably to be anticipated ... The standard of reasonableness is that of prudent men familiar with the ways and vagaries of the sea"); The Elwood, 69 F.Supp. 368, 369 (S.D.Cal.1947) (moving vessel has "burden of showing that the exercise of reasonable nautical skill would not have prevented the accident"); see also The Charles H. Sells, 89 F.2d 631, 633 (2d Cir.1937) (moving vessel must show "a proper display of nautical skill," which means "no more than that the vessel must show herself free from 'fault' in the ordinary sense")
 
 
 [4]
 Weyerhaeuser suggests that Atropos Island had the burden of showing that there was no possibility that dropping the second anchor would have prevented the allision. Weyerhaeuser misstates the correct burden. Under The Louisiana, Atropos Island only had to take all "proper precaution[s]." 3 Wall. at 173, 70 U.S. at 173. Atropos Island met this test by showing that use of the second anchor was not a proper precaution because it would create more problems than it solved
 Weyerhaeuser also argues that dropping the second anchor could not have caused Atropos Island to go out of control because the ship was already out of control. The evidence does show that Atropos Island's captain lost control over his ship shortly before it hit Cynthia. The evidence also shows, however, that the captain was attempting to use his engine and one anchor to regain control over his ship, and that he had previously avoided allision with Cynthia by a similar maneuver. Thus, the district court did not clearly err by finding that the captain exercised reasonable care by attempting to regain control over his ship by using his engine and one anchor rather than by dropping a second anchor.
 Finally, Weyerhaeuser suggests that the district court may have improperly exonerated Atropos Island based solely on its finding that the storm was an "Act of God," rather than on a finding that Atropos Island's crew used reasonable care. The district court, however, explicitly stated that Atropos Island and Cynthia had a continuing duty to use reasonable care even though the storm was an "Act of God," and that it exonerated Atropos Island because its crew used reasonable care.
 
 
 [5]
 Cynthia contends that Atropos Island's inability to avoid striking Cynthia even through the use of reasonable care shows that Cynthia's allision with the docks was inevitable. Although this is a possible inference, Atropos Island's ability to avoid the allision for over four hours also supports an inference that Cynthia's crew could have prevented the first allisions if they had been more vigilant
 
 
 [6]
 Weyerhaeuser argues that Cynthia was not in a safe position because one of its mooring points, the Miami, was itself inadequately moored. The record does show that Cynthia's initial allision with the docks and Miami caused all but one of Miami's mooring lines to snap. The record also shows, however, that Miami's crew reattached several lines, so that the barge had three or four mooring lines. The record contains no evidence that the use of three or four mooring lines was inadequate
 
 
 [7]
 Prosser also notes that a defendant is not liable for damages due to a foreseeable intervening cause "unless the defendant's conduct has created or increased an unreasonable risk of harm through its intervention." Id. at 305; see also Restatement (Second) of Torts Sec. 302 (1965). Cynthia's position next to the docks did create a risk that Atropos Island might strike Cynthia and cause further damage to the docks. Because the same risk would have existed if Cynthia had moored itself to the docks without negligence, however, we cannot conclude that this risk was unreasonable
 
 
 [8]
 Weyerhaeuser has moved to strike the part of Cynthia's reply brief that addresses liability for the second allisions on the ground that this issue is raised by Weyerhaeuser's appeal rather than by Cynthia's cross-appeal. See Fed.R.App.P. 28(c). We find it unnecessary to decide this motion because Cynthia's reply brief merely duplicates arguments made in Cynthia's opening brief, and has not affected our analysis of Cynthia's liability for the second allisions